# IN THE MATTER OF THE APPLICATION OF LEWIS P. KELSEY FOR A WRIT OF HABEAS CORPUS.

FINAL JUDGMENT.—INTERLOCUTORY ORDER.—ORDER REQUIRING PAYMENT OF TEMPORARY ALIMONY, SUIT MONEY AND COUNSEL FEES NOT APPEALABLE.—JURISDICTION.—APPEAL.—Pending an action for divorce against the petitioner, the court made an order requiring him to pay temporary alimony and suit money and counsel fees. From this order, petitioner attempted to appeal, and filed and served a notice of appeal, *supersedeas* bond and bond for costs, and then refused to pay the amounts required to be paid by order of the court. Thereupon, a citation was issued and the petitioner arrested and brought before the court and adjudged guilty of contempt and committed to the United States marshal, to be by him confined and imprisoned in the penitentiary until the order of the court was obeyed. *Held*, that the order, pending the divorce proceedings, requiring the payment of temporary alimony, suit money and counsel fees, is not a final judgment from which an appeal may be taken, under the provisions of 2 Comp. Laws 1888, § 3635, par. 1, nor is it an interlocutory order from which an appeal may be taken under paragraph 3 of the same section, nor is the interlocutory character of the order affected by the fact that it may be enforced by execution in the same manner as judgments in ordinary actions, and hence, the court had jurisdiction to adjudge petitioner guilty of contempt.

(No. 655. Decided Dec. 21, 1895. 43 P. R. 106.)

Original application by Lewis P. Kelsey for a writ of *habeas corpus. Writ denied.*

*Messrs. Dickson, Ellis & Ellis,* for petitioner.

In our opinion, but two questions are presented for consideration: *First*—Was the judgment or decision of the court requiring the defendant in the case of *Kelsey* v. *Kelsey* to pay temporary alimony, suit money and counsel fees, appealable immediately by said defendant. *Second*—If it were so appealable, did the perfecting of said appeal and the filing of an undertaking to stay proceedings pending said appeal deprive the lower court of the power to take any steps to enforce payment or satisfaction of the judgment or decision appealed from while the appeal therefrom was pending and undetermined? That an appeal may be prosecuted immediately from such a judgment or decision has been repeatedly decided. In the case of *Sharon* v. *Sharon* it was so held after thorough consideration of the question by the court. See 67 Cal. 185, read 195 *et seq.* In that case it was said that an order for the payment of alimony and counsel fees is in the nature of a final judgment; that it possesses all the essential elements of a final judgment; that nothing remains to be done except to enforce it, and for that purpose an execution might issue and be proceeded on as if the judgment had been rendered in an ordinary action for the recovery of a specific sum of money. See, also, 2 Comp. Laws 1888 of Utah, p. 375, § 3674.

Upon a petition for a rehearing in the case of *Sharon* v. *Sharon, supra,* the question of the appealability of such an order was again maturely considered by the court and its decision adhered to, the opinion upon rehearing being delivered by Ross, Judge. The decision there made was followed in the case of *Turner* v. *Turner,* 80 Cal. 141,

and *White* v. *White*, 86 Cal. 212. See, also, *Daniels* v. *Daniels*, 9 Colo. 133; *Blake* v. *Blake*, 80 Ill. 523; *Foss* v. *Foss*, 100 Ill. 576; *Hecht* v. *Hecht*, 28 Ark. 92; *Lochnane* v. *Lochnane*, 78 Ky. 467; *Blair* v. *Blair*, 74 Iowa, 311. See, also, *Collins* v. *Collins*, 71 N. Y. 269; *Forgay* v. *Conrad*, 6 How. (U. S.) 200; *Trustees* v. *Greenough*, 105 U. S. 527, 531. (We would invite special attention to the case last cited and the statement of facts therein contained.) In each of the foregoing cases it was decided that an order, judgment or decision, such as we have to deal with here, was a final judgment within the meaning of a constitution or statute providing for appeals from "final judgments," notwithstanding the judgment was one which did not finally dispose of the merits of the action, or dispose of all the issues involved, and in each it was recognized that such an interpretation of the term "final judgment," thus used in the constitution or the statute, was not only essential but indispensable for the proper protection of litigants.

In *Blake* v. *Blake*, 80 Ill., the court, speaking of a similar decision, says: "Such a decree does not seem to us to be merely interlocutory. It is more in the nature of a final decree, and if no appeal lies, this case affords an instance of a money decree against a party from which no relief can be had, no matter how unjust or oppressive. This ought not to be. It is no answer to this position to say, defendant can have this decree against him reviewed on appeal or error, after final decree in the original cause. Of what avail would that privilege be to him then? The litigation might be protracted and years elapse before any final decision could be reached. In the meantime, he has been imprisoned for disobedience to the decree, or his property under process of law been subjected to the payment of the sum decreed. Nor does the fact that an appeal if allowed, impose any hardship not incident to money de-

crees from which appeals may be prosecuted. On the theory that alimony is for the immediate benefit of the wife, to enable her to prosecute or defend her suit against her husband on terms of equality, the only serious result would be to delay the litigation until the propriety of the decree for temporary alimony could be determined in the appellate court. On the contrary, if an appeal should be denied, it might subject defendant to very great hardship in many cases, as the sequel will show. It is apprehended there can be no decree against the party that will work a deprivation of his property or liberty, from which no appeal or writ of error will lie."

The undertaking on appeal referred to in the statement of the case is sufficient to operate as a stay of proceedings under the statute. *Sharon* v. *Sharon*, 67 Cal. 185, 220. Did then the taking of the appeal and the giving of the stay bond so far oust the court below of jurisdiction that it could not, pending the appeal, take any steps to enforce satisfaction of the decision appealed from? We submit that it did, and that the order thereafter made adjudging petitioner guilty of contempt and committing him to custody was an order which the lower court had not the jurisdiction or lawful authority to make. See 2 Comp. Laws, p. 365, § 3642; *Pennie* v. *Superior Court*, 89 Cal. 31; *Draper* v. *Davis*, 102 U. S. 370; *Keiser* v. *Farr*, 105 U. S. 265. See, also, *Ex parte Orford*, 102 Cal. 656.

Mr. *C. S. Varian*, contra.

The principal case cited in support of petitioner's contention is *Sharon* v. *Sharon*, 67 Cal. 185. In this case the order for suit money and alimony was made after the case had been heard, and just three days before the final decree was entered. Appeals from the order and decree were before the court, and an order to show cause why all

proceedings upon the judgment and order should not be stayed pending the appeals was obtained. Respondent also moved to dismiss both appeals; the one from the order on the ground of there being no appellate jurisdiction in divorce cases. The court stayed the proceedings and sustained its jurisdiction in both appeals.

It may be observed that the order for suit money and alimony was in fact a part of the final decree. True, it was a separate order in the sense of being made at a different time and before the decree was entered. Yet it was based upon the facts found and conclusions rendered, and was simply incident to the decree. This case was not within the reason of the rule governing applications for suit money, etc. The wife *had* been able to try her case, and to live while it was being tried without being alimented from the faculties of her husband. The third paragraph of the syllabus states the order to have been made for temporary alimony *pendente lite*, but the next paragraph shows that the order was for permanent alimony in accordance with Cal. Code. Deering's Civil Code, § 139. The order for counsel fees was made at the *end* of the litigation and was as before stated, really an incident to the final decree. It would seem that the court might well have treated the appeals as being, in fact, but *one*, and the manifest attempt of the trial court to *divide* the judgment as evasive and futile. The results sought, *i. e.*, a review of the determination as to suit money and alimony, and a stay of proceedings, pending decision, would have been accomplished just the same, and the court would not have strayed from the beaten path to decide a question not necessarily before it. But it *did* decide the question, and put an interpretation upon the language of the statute, which is in violation of all rule.

The dissenting opinion of Justice McKee in this case makes clear the errors of the majority's reasoning and

states the law. A number of cases cited in support of the contention of petitioner. In *Daniels* v. *Daniels*, 9 Colo., the main action was to obtain a decree annulling articles of separation. A *separate* petition for alimony *pendente lite* was filed in the cause. The court said: "The latter is clearly a separate and independent relief, and requires the entry of a separate judgment." The statute (cited) gave appellant jurisdiction "over all judgments and decisions not only in all civil actions, but in proceedings of a special or *independent* character." Colo. Stat. 1885, p. 350; 9 Colo. p. 39. In *Blake* v. *Blake*, 80 Ill., the appeal was from a "decree" (as stated in the opinion) awarding suit money to defray the expenses of defending another appeal from an order committing appellant for contempt for noncompliance with a previous "decree" for suit money. The court say that the question raised has never been passed upon by it, but "upon first impression" the appeal will lie, and further, that there can be no decree against a party that will deprive him of his property, etc., without an appeal or writ of error, and that the court has always assumed jurisdiction to review action making allowances as alimony, etc.

Citing *Blake* v. *Blake*, 70 Ill. 518. It is needless to remark that the statement concerning the existence òf appeals in all cases must be an inadvertence, since the court could not fail to recognize the fact that the right of appeal depends entirely upon the statute law. But the case cited as authority for the practice of the court was an appeal from a final judgment and order denying a new trial, after verdict, and the allowance then reviewed was embraced in the final decree. The case (next cited), *Foss* v. *Foss*, 100 Ill. 579, was an appeal from a "decree" awarding temporary suit money. The question of appeal from such a "decree" (made upon separate petition) was not presented nor decided, except upon the theory that

the discretionary action of the court below was not subject of review. This the court does decide and nothing more. In support of its decision it relies upon *Blake* v. *Blake, supra,* already considered, and *Foote* v. *Foote,* 22 Ill. 425. This last case was also an appeal from a final judgment, dissolving the bonds of matrimony and awarding as incident thereto, permanent alimony.

The question presented has never been presented by the Illinois court, at least by the cases cited. *Foote* v. *Foote* (1859), and *Blake* v. *Blake* (1873), were decided upon a statute giving an appeal from "all final judgments, decrees and orders." Ill. Rev. Stat. 1874, p 763, § 58. The other cases were decided upon statutes giving the appellate courts jurisdiction "of all matters of appeal or writs of error from final judgments, orders or decrees." Starr and Curtis, Stat. vol. 1, p. 762. Proceedings in divorce were in accordance with chancery practice. Starr and Curtis, vol 1, p. 338, § 5. Decree for money lien upon lands, etc. Starr and Curtis, p. 412, § 44; *Blair* v. *Blair,* 74 Iowa, 312, was an appeal from order for temporary alimony. The statutes gave the supreme court appellate jurisdiction "over all judgments and decisions * * * as well in civil actions, as in proceedings of a special or independent character." McClain's Code, vol. 2, p. 1281, § 4392 (same as Colo. *supra.*) Also: "when an order grants or refuses, continues or modifies a provisional remedy." p. 1283, § 4393.

The court sustained the appeal under this last section saying, however, that the alleged order in the form of a judgment, and being also permanent in form and authorizing executions, might be regarded as final. *Hecht* v. *Hecht,* 28 Ark. p. 93, sustains an appeal, but holds that the order is not strictly interlocutory, but is "so far as it affects the rights of this appellant, in its consequences, wholly independent of his suit for divorce. Thus, by

simply deciding that the order is not interlocutory, but final, the court is enabled to bring the case within the constitution and the statutes. *Lockrane* v. *Lockrane*, 78 Ky. 468 apparently sustains petitioner's contention, and may be classed with the Arkansas case, *supra.* In both states, as in Illinois, the jurisdiction is in chancery. *Turner* v. *Turner*, 80 Cal. 141, does not decide the question. Respondent made no argument and the point was not raised. *White* v. *White*, 85 Cal. 215, decides it upon the authority of *Sharon* v. *Sharon.* From the fact that this question of jurisdiction is again raised in California, five years after the leading case was decided, we may infer that the result reached by the California court is not satisfactory to the profession.

In *Collins* v. *Collins*, 71 N Y. 370, the appeal was from an order of the general term affirming order for suit money. We have not the Code and suit statutes of New York bearing upon the question at hand, but some light is reflected by the observations of the judges in this and cases cited. The objection was made by counsel, that the order at general term was not reviewable ·in this court, citing cases. Disposing of the question, Rapalle, J., says: " But where the facts are such that on general principles of equity, a plaintiff is not entitled to demand alimony, the question becomes one of law, reviewable in this court."

In *Binkley* v. *Binkley*, 47 N. Y. 45, cited by counsel in the principal case, the appeal was from an order in contempt proceedings, requiring defendant to comply with prior orders for alimony, and in event of failure so to do, striking out his answer, and in the meantime staying all proceedings on his part, including an appeal. The court of appeals held that the contempt order was withdrawn, was not final nor appealable, but that so much of it as stayed proceedings *was,* saying: " This is in the view of a majority of this court an absolute and final order, etc."

This same case came again before the court in 50 N. Y. 186. This time an appeal from original order awarding alimony, etc. The court declined to pass upon the question, saying: "The plaintiff claims that the order complained of is not appealable to this court. We do not pass directly upon that question." (p. 203) I have not been directed to a case where the New York court has passed directly upon the question. It is clear in any event, that the question is all the time, of necessity, one of local law, depending upon the statutes as construed by the court alone authorized to construe them. It cannot be said that any of the cases cited and relied upon by petitioner are controlling here. The decisions in Kentucky, Arkansas and California are the strongest; yet, but one: *i. e.* the California case, is upon statutory provisions like ours. It was determined after Utah had adopted the code, and is entitled to nothing more than respectful consideration. On the other side, I cite: *Earls* v. *Earls*, 26 Kan. 178, where Justice Brewer, now of the United States supreme court, delivered the opinion of the court, basing it, it is true, upon statutory provisions. *Abbey* v. *Abbey*, 6 How. Pr. N. Y. 340n. In *Cooper* v. *Mayhew*, 40 Mich. 528, and in *Lapham* v. *Lapham*, 40 Mich. 527, it is directly held that such an order is not appealable. It was stated in the argument that these cases were overruled in 53 Mich. I do not so understand it.

In *Ross* v. *Ross*, 47 Mich. 485 (1881), the appeal was from an order committing for contempt for failure to comply with order awarding alimony. The court expressly affirms the rule that no appeal lies from the original order. See p. 187.

In *Rose* v. *Rose*, 53 Mich. 586 (1884), the appeal was also from an order in contempt. I do not perceive that *Cooper* v. *Mayhew*, is reversed by this case. The Mich-

igan courts seem to distinguish between orders awarding money, and orders imprisoning for failure to pay. It does, however, affirm my contention here that orders for alimony are interlocutory and not appealable, while sustaining appeals in contempt cases. See 77 Mich. 469, 82 Mich. 75. An examination of cases from Ohio and Indiana, cited in the Digest as sustaining petitioner's contention, discloses: That Ohio cases were appeals from final judgments. *Rogers* v. *Rogers,* 35 N. E. 310; *Graves* v. *Graves,* 35 N. E. 720. That in Indiana, appeals from such interlocutory orders are given. *Gruhl* v. *Gruhl,* 23 N. E. 1101; *Taylor* v. *Richardson,* 28 N. E. 205; *Sellers* v. *Sellers,* 40 N. E. 509; R. S. 1881, 1042.

It is not perceived how *Ex parte Oxford,* 102 Cal., or *Pennie* v. *Superior Court,* bear upon this case. *Forgay* v. *Conrad,* 6 How. 200; *Trustees* v. *Greenough,* 105 U. S. 527–531; *Draper* v. *Davis,* 102 U. S. 370; *Hersey* v. *Farr,* 105 U. S. 265, are also cited.

The other cases from 102 and 105 U. S. simply affirm what no one denies, that upon an appeal with *supersedeas* lawfully taken, jurisdiction of the court below ceases. More apt citations of authority as to what *final judgment* means; may be given. *Bestwick* v. *Brinkerhoff,* 106 U. S. 3; *Grant* v. *Phœnix Ins. Co.,* 106 U. S. 431; Phillip's Sup. Ct. Pr. 5 ed. 183. After all is said, the question remains, what is the statute law of this territory? Section 2987. A judgment or order may be reviewed as prescribed in the Code, and not otherwise. Section 3532. Any party may appeal in the cases prescribed in this Code. In the following section the cases in which appeals may be taken are stated. The legislature has expressly mentioned the "orders" from which appeals may be taken. The order in this case is not included, but the argument of counsel in insisting upon reading this clearly excepted case into the statute, would be addressed with propriety to the leg-

islatūre. That a man may be deprived of liberty or prop-erty by a judgment from which no appeal lies, is no evidence that such judgment is not lawful. Nor is it to be inferred from the fact of deprivation of liberty, or property, that therefore, an appeal must lie; the question is simply one of statutory law. If the statute gives an appeal, one may be had, otherwise not.

Under existing United States laws, men may be im-prisoned for any term and fined in any sum by subordi-nate courts of the United States in contempt proceedings. No appeal is given, and the only restraint upon the judges is the judicial (and personal) conscience and the provisions of the Constitution prohibiting cruel and un-usual punishments. Confidence must be reposed somewhere and all restrictions and safeguards necessary to the pro-tection of the citizen, are left with the legislature. This court holds that no appeal lies in contempt proceedings. Yet this is practically what is attempted here. Petitioner files a notice and bond on appeal from the order requiring him to pay alimony, then refuses to pay, and upon being committed, sues out a writ of *habeas corpus* and is admitted to bail pending the hearing. So he accomplishes his con-temaceous end just the same as if he could appeal directly from the order of commitment. I submit this trifling with law and courts should not receive so much distin-guished consideration. If orders, such as these, are to be thus ignored, and every one that shall be made in a divorce suit, may bring the same results, when, I ask, will there be an end to the litigation?

For some views as to the construction of the statutes, I refer to *Thomson* v. *Thomson*, 5 Utah, 401.

KING, J.:

An action for divorce was brought against the petitioner by Sadie Kelsey. The petitioner specifically denied that

there had been a marriage between him and the plaintiff.
Upon application for temporary alimony and suit money,
the court ordered that, until the further order of the
court, defendant in the action should pay $40 per month
to plaintiff, and that within 20 days from September 30,
1895, he should pay the further sum of $75 suit money
and $200 counsel fees.    On the 1st day of October, 1895,
said defendant filed and served in due form a notice of
appeal from such order, and made application to the court
to fix the amount of a *supersedeas* bond in order to stay
proceedings pending an appeal; but the court, being of
opinion that the decision rendered in the cause was not a
final judgment, declined to fix the amount of said bond.
Thereupon defendant duly filed an undertaking on appeal
from said decision in the sum of $300, conditioned to pay
all damage and costs which might be awarded against him
on appeal, and also an undertaking in the sum of $2,000
to stay proceedings upon said appeal, which contained the
proper statutory conditions.    No exceptions to the bonds,
either as to form or sufficiency of the sureties, were ever
taken.    Defendant, having failed to pay the money as
ordered by the court, was, after hearing upon citation,
adjudged guilty of contempt of court, and committed to
the marshal, to be by him confined and imprisoned in the
penitentiary until the order of the court was obeyed.
Application was made to one of the justices of the supreme
court for a writ of *habeas corpus,* and the petitioner
released upon giving a bond in the sum of $2,000, con-
ditioned to abide the decision of the supreme court to
be made upon the hearing of said application.

It is conceded by counsel for the petitioner that the
only question presented for the consideration of this court
is: Did the district court have authority and jurisdiction
over the petitioner to adjudge him guilty of contempt?
That involves the further question, and the only one to

be considered: Was the order of the court for the payment of alimony *pendente lite,* suit money, and counsel fees a final judgment? If it was then an appeal would lie; and if the petitioner followed the statutory steps relating to appeals, the lower court had no jurisdiction to institute contempt proceedings, or punish for disobedience of said judgment.

Section 3635, 2 Comp. Laws, provides that "an appeal may be taken to the supreme court from the district court, *first,* from a final judgment in an action or special proceeding commenced in the court in which the same is rendered.   *   *   *   *   *Third,* from an order granting or refusing a new trial, from an order granting or dissolving an injunction, from an order refusing to grant or dissolve an injunction, from an order dissolving or refusing to dissolve an attachment, from an order granting or refusing to grant a change in the place of trial, from any special order made after final judgment, and from an interlocutory judgment in actions for partition of real property, and from an order confirming, changing, modifying or setting aside the report, in whole or in part, of the referees in actions for the partition of real property, in the cases mentioned in the provisions of this Code.   *   *   *"

Counsel for petitioner insist that the order entered by the lower court in the divorce proceedings was a final judgment, because, as it was argued, it possessed all the essential elements of a final judgment, and could be enforced by execution in the same manner as judgments rendered in ordinary actions for the recovery of a specific sum of money. In support of this position, counsel cite the cases of *Sharon* v. *Sharon,* 67 Cal. 185, 7 Pac. 456, and 8 Pac. 709; *Daniels* v. *Daniels,* 9 Colo. 133, 10 Pac. 657; also, cases from Illinois, Arkansas, and Kentucky. The statute of California is identical with ours, and it is urged that we should follow the construction given the

statute by the supreme court of that state. We entertain
great respect for the decisions of that court, and have,
from the beginning of the territory, manifested that
respect by accepting, in very many adjudications by this
court, the views by it enunciated; and because much of
our Code was borrowed from California, and many of its
provisions came charged with a construction by the supreme
court of that state, we have with almost unbroken uni-
formity adopted such construction. But in this case the
statute above quoted, while copied from the California
code, had not been construed at the time it was enacted
by our territorial legislature. Therefore we feel at liberty
to decide this question unembarrassed and untrammeled by
any decision from our sister state.

In the case from California above referred to, it is de-
cided that the order of the court for alimony *pendente lite*,
together with counsel fees, is a final judgment, and there-
fore an appeal will lie. A dissenting opinion was written
by Judge McKee, the reasoning of which we think sound,
and from which we quote with approval. Judge McKee
says:

"Besides, the interlocutory character of the order ap-
pealed from is not changed by the fact that it commands
payment of a large sum of money. Nor is it affected by
the provision of the Code as to the process by which it
may be enforced. It is the execution which may be issued
upon the order to which the Code gives the same legal
effect as if issued upon a final judgment; but it does not
give to the order the effect of a final judgment. The
order is unchanged in its nature by the remedy adopted
for enforcing it, and the execution is given merely as an
additional remedy for that purpose. As an additional
remedy, the court making the order is not bound to resort
to it. Especially, in actions of divorce, it is left to the
discretion of the court to enforce an order made *pendente*

*lite* by execution, or by proceedings in contempt for not complying with it, or by requiring reasonable securities for making the payment of the money, or by the appointment of a receiver, or by any other remedy applicable to the case. * * * Moreover, a judgment is the final sentence of the law in an original suit.

"A money judgment is a legal demand or a record debt upon which suit may be brought. The money order in this case is for alimony. Alimony is not an original suit. It arises out of some other suit, in which a marriage *de facto* is confessed or proved. The allowance of alimony pending such a suit is not a debt. It is a legal liability which arises out of the obligation imposed by law upon every married man to contribute to the support of his wife. When the fact of marriage is judicially ascertained, the jurisdiction of the court to award alimony *pendente lite,* as incidental to the suit before it, may be called into exercise by the motion of the wife; and the court in the exercise of its jurisdiction may award it out of the community property, or the separate property of the husband. In making the award, the court acts upon the principle that the husband and wife are jointly interested in the property and fortunes of the community, and that one is as much entitled as the other to maintenance and support out of it during the proceedings between them for a separation. So that allowing the wife alimony is only awarding her what she as a wife is lawfully entitled to. Her rights of property in the community estate are vested until divested by judicial decree which dissolves the marriage status, and makes distribution of the estate."

Under the various definitions of final judgment, as given to us by the courts and law writers, it seems clear that the order in question cannot be included. When an order is made pending the cause, and before a final hearing on the merits, it is interlocutory in every sense of the

word.  It is not a final decree disposing of the cause, either by sending it out of court before a hearing is had on the merits, or after such hearing decreeing either in favor of or against the prayer of the petitioner.  The application for alimony *pendente lite*, in this case, is merely an incident to the action brought by plaintiff.  It is so co-ordinated with it that it becomes inseparable from it.  It is a mere shadow, following the substance, which is the original bill for separation.  Because the order of the court may be enforced by execution does not deprive it of its interlocutory character.  It certainly is as much of an incident to the main case as the examples given in subdivision 3 above quoted, and which the statute clearly denominates interlocutory orders.  And, though execution may issue, it does not possess the element of finality.  It determines no issue, and is a final adjudication of no question.  It may be changed, or entirely set aside.  It can be modified upon application, or upon the court's own motion, as it exercises absolute control over it.  And it must not be forgotten that the sole purpose of alimony *pendente lite*, and an order for suit money, is to enable the spouse to meet the case presented.  No better argument can be offered to show the interlocutory nature of this order than to state that it is made to enable the party to try the cause which will result in a final judgment.

Much of the argument of petitioner's counsel is devoted to showing the hardship which may result from an unjust order.  But because a judge may award an exorbitant sum is no argument against the court's power.  It might be an argument of convincing and overwhelming force, when made before a legislative body as a reason for amending the statute relating to appeals.  It is a discretionary power, possessed by the courts, to award or refuse temporary alimony.  The legislature has seen fit to repose confidence and confer this

power; and even if its abuse were conceded, it ought not to move the court to legislate words into the statute. There is also another view to be suggested relative to this question. Every wife who alleges statutory grounds for a divorce is entitled to present her grievances to the court. And she is entitled to support from the property of her husband, or the community property, until the final order of the court. A dismissal of the case or its indefinite postponement ought not to be the penalty to be visited upon her because of poverty or inability to prosecute the suit for lack of means, when the husband may be in possession of ample property. If appeals are permitted from these interlocutory orders granting alimony *pendente lite,* worthy persons, entitled to divorce, by appeals and the "law's delays," would be not only prevented from prosecuting their actions but deprived of sustenance pending final hearing. We merely mention this because of the emphasis given by counsel to the matter of the hardship resulting from the denial of an appeal.

Mr. Freeman, in his work on Judgments (volume 1, § 35), clearly recognizes that this order is interlocutory. He says: "Exceptions. But owing to particular circumstances and hardships, the courts have refused to dismiss appeals from some judgments which did not completely dispose of the cases in which they were entered. * * * To avoid the necessity of being called upon to review such judgments, the superior courts have cautioned the inferior ones, and endeavored to impress upon them the evils resulting from the practice of entering interlocutory judgments capable of being at once enforced against a party, and doing him irretrievable damage before a final judgment can be entered. * * * Probably to avoid special hardship resulting from the failure to give a right of appeal from other than a final judgment or decree, the

following have been decided, for the purpose of an appeal, to be final judgments:  *    *    *    Fixing the amount of alimony *pendente lite,* and directing its immediate payment." The view expressed in the last sentence is the doctrine of expediency, and while, perhaps, it may be potential before a legislative body, it should not lead courts into the realm of legislation. Many of the cases cited by counsel for petitioner arose in states having statutes different from ours. We are of opinion that the order entered by the court below, directing the payment of alimony *pendente lite,* suit money, and counsel fees, was interlocutory, and not a final judgment. *Earls* v. *Earls,* 26 Kan. 178; *Cooper* v. *Mayhew,* 40 Mich. 528; *Chase* v. *Ingalls,* 97 Mass. 524; *Miller* v. *Miller,* 75 N. C. 71; *Ex parte Perkins,* 18 Cal. 60. And see *Thomson* v. *Thomson,* 5 Utah, 401, 16 Pac. 400; *Lapham* v. *Lapham,* 40 Mich. 527. The petition for a writ of *habeas corpus* is denied, and the petitioner remanded to the custody of the United States marshal.

MERRITT, C. J., and BARTCH, J., concur.