GENEVA M. SNOW, RESPONDENT, ·. C. EDGAR
SNOW, APPELLANT.

CONTEMPT—FAILURE TO PAY ALIMONY—RIGHT OF APPEAL—MODI-
FICATION OF DECREE—EVIDENCE.

1. A distinction exists, upon principle and authority, between
that class of contempt proceedings wherein it is sought to
vindicate the authority and dignity of the court, or where
the contempts consist in the doing of a forbidden act injuri-
ous to the opposite party, wherein the process is criminal in
its nature, and wherein conviction is followed by a penalty
of fine or imprisonment or both, which is merely punitive,
and that other class of contempts where the proceeding is
remedial in its nature and is intended for the benefit or ad-
vantage of the opposite party, to compel the doing, or omis-
sion to do, an act necessary to the administration of justice
in enforcing some private right in a civil proceeding.

2. When contempt proceedings are instituted, after judgment, to
enforce an order for the payment of alimony and costs for
the benefit of the opposite party to a civil proceeding, such
proceeding is civil and remedial in its nature, and an appeal
lies under Comp. Laws 1888, § 3632, and section 3635, subd. 1.

3. The evidence presented on the trial of this cause *held* sufficient
to support the judgment for the order of arrest.

4. Where the court below, on application, refused to modify the
decree for alimony, on the husband's claim of his inability
to pay the alimony allowed, and the further claim that a
settlement had been made by the parties prior to the insti-
tution of divorce proceedings, *held*, that under section 2606,
Comp. Laws Utah 1888, such question was one of fact, and
that the evidence, though conflicting, was sufficient to sup-
port the judgment.

5. Any man attaining his majority, who voluntarily enters into
the marital relation, should be willing to assume those ordi-
nary and reasonable obligations of a husband which natur-

ally follow and attend such relation.　These duties require him to provide the wife and children with a reasonable maintenance and support during the continuance of such relation, and such as is commensurate with his means and station; and in case of separation and divorce occasioned by his fault, he should not complain that the duties so assumed should be held a continuing obligation on his part.

(No. 623.　Decided Feb. 4, 1896.　43 P. R. 620.)

Appeal from the district court of the Third judicial district, Territory of Utah, Hon. George W. Bartch, *Judge.*

Bill by Geneva M. Snow against C. Edgar Snow for divorce.　Defendant appeals from an order adjudging him guilty of contempt in refusing to pay permanent alimony.　Appeal allowed and judgment affirmed.

*R. H. Jones,* for appellant.

*Powers, Straup & Lippman,* for respondent.

Appeal does not lie from the order adjudging defendant guilty of contempt.　*People* v. *Owens,* 8 Utah 20; *Clark* v. *People,* 12 Am. Dec. 184, notes; *In re Whittemore,* 35 Pac. Rep. 529; *Staples* v. *Staples,* 24 Lawyers' Rep. 433; 2 Enc. of Pleading and Practice, 130.

Defendant's remedy was to have applied for a modification of the decree before the contempt proceedings were instituted.　*State* v. *Second District,* 40 Pac. Rep. 66; *O'Callaghan* v. *O'Callaghan,* 69 Ill. 532.

The question of ability to pay is one fact for the court below.　*Ex parte Cottrell,* 59 Cal. 417.

MINER, J.:

The record shows that on November 29, 1893, after a personal service of the summons, the respondent was granted a decree of divorce, and the custody of a minor

child, and $10 per month alimony, payable monthly during her life as long as she remained unmarried, and also costs of suit. This decree was not appealed from, and the costs and alimony were not paid. In February, 1895, the respondent caused a copy of the decree, with demand for payment, to be served on appellant. On the 13th of February, 1895, plaintiff served notice and took proceedings to modify the decree by striking out the allowance of alimony. A hearing was had thereon. The motion was denied, and appellant was adjudged guilty of contempt of court for his refusal and neglect to pay the alimony allowed with costs, and was given 30 days time in which to purge himself of the contempt, or show cause why he should not be punished for such contempt. No cause being shown to the contrary, on May 2, 1895, the court ordered that a warrant of arrest issue, and that the appellant be committed to the custody of the marshal until he purge himself of such contempt. From these orders, made after the decree, this appeal is taken. Several grounds for reversal, based upon the insufficiency of the evidence and an alleged former settlement between the parties, are also relied upon by appellant's counsel.

The first question presented by the appeal is whether an appeal will lie to this court from an order adjudging the appellant guilty of contempt in refusing to pay alimony and costs ordered by the court. Counsel for the appellant insists that the judgment for contempt was a civil proceeding, under section 3632, Comp. Laws Utah 1888, which provides that "a judgment or order in a civil action, except when expressly made final, may be reviewed as prescribed in this Code, and not otherwise;" and subdivision 1, § 3635, Comp. Laws Utah 1888, which provides that "an appeal may be taken from a final judg-

ment in an action or special proceeding commenced in the court in which the same is rendered," authorizes the appeal in question. In the case of *People* v. *Owens*, 8 Utah 20, 28 Pac. 871, this court held that it would not review proceedings in contempt when the court below had jurisdiction. In that case the court below ordered the party to produce in evidence certain records which he had in his possession, and he was adjudged guilty of contempt in disobeying the order of the court, and a fine was imposed upon him, from which judgment he appealed. In *Ex parte Whetstone*, 9 Utah 156, 36 Pac. 633, the defendant was convicted under section 725, Rev. St. U. S., in a criminal proceeding for contempt, for procuring a witness who was duly subpœnaed to appear before the grand jury, and testify in a criminal case, to leave the territory and not appear as such witness. This court refused a writ of *habeas corpus* to review his commitment for contempt, when the trial court had jurisdiction. *In re Kelsey*, 43 Pac. 106, decided at the last December term, this court refused a writ of *habeas corpus* to the relator, who was adjudged guilty of contempt by the trial court for refusing to pay a monthly allowance and costs of the proceeding pending divorce proceedings, and before judgment; the court holding that the order of conviction was an interlocutory order made *pendente lite*, and not a final judgment, from which an appeal would lie. In *Ex parte Whitmore*, 9 Utah 441, 35 Pac. 524, this court held that an appeal would not lie from an order adjudging the appellant guilty of contempt, and imposing a fine for willfully and contemptuously violating the decree and injunction of the court in removing a measuring box placed in the channel of a stream for the purpose of measuring and diverting the water of the stream for irrigation purposes, in direct violation and

disobedience of such injunctional order, holding this to be a criminal contempt, and therefore the order of conviction was not appealable. In this case the court carefully examined and discussed the question of civil and criminal contempt, holding that the proceedings in the case which culminated in the conviction and fine appealed from were for a criminal contempt, and were not instituted to bestow the damages to be recovered for the injury complained of upon the injured party, because his rights had been infringed upon, but that the proceeding had been brought in the name of the people, for the purpose of punishing the party who had contemptuously disobeyed and violated the direct order and command of the court; that the injured party obtained no pecuniary benefit from the order of conviction, and that, if he had any remedy for damages, it was not under this proceeding; that the fine, if paid, would go to the territory, and not to the injured party. The court said: "The act restrained had been done, and it was out of the power of the petitioner to undo it. The water had been appropriated by him, and the measuring box had been taken away and destroyed, in violation of the express order and command of the court. The main object of the proceeding was to vindicate the authority of the court. Where the contempt is such that it results in a violation of the rights of the public or of the rights of an individual, which have been adjudicated and fixed by the court, and a punishment is imposed in the interest of public justice, and not in the interest of any individual litigant as a money indemnity, the offense is necessarily of a public or criminal nature, and is clearly covered and made punishable by our statutes as a public offense. In such cases, if a fine is imposed, its limit is fixed and determined by the statute, and is not fixed by the injury demanded or sustained by the individual injured. The

proceeds when collected, go into the public treasury, and not for the benefit of the party injured." The contempt consisted in doing a forbidden act that was not only injurious to the opposite party, but was a contemptuous violation of the express commands of the court. The process was therefore criminal in its nature, and the conviction was properly followed by fine and costs that did not exceed the sum that the court was authorized to impose, under Comp. Laws Utah 1888, § 3821, subd. 5, and section 3830. The fine is a punishment, and not an indemnity; and if imprisonment is also imposed, it is in the interest of public justice and becomes a penalty, and in no way becomes an indemnity to the individual injured. *People* v. *Court of Oyer and Terminer*, 101 N. Y. 248, 4 N. E. 259; *State* v. *Davis* (N. D.), 51 N. W. 942; *State* v. *Giles*, 10 Wis. 101; *In re Murphey*, 39 Wis. 286. In discussing the same subject this court said: "There is another class of contempt proceedings, which are purely remedial in their character. This class embraces such contempt proceedings as were resorted to by a successful litigant in equity to secure the fruits of his litigation in case of the refusal of the defeated party to obey the order or decree made in such action. Such a proceeding, while in form a contempt proceeding, was never instituted primarily to vindicate the court's authority, but for the sole purpose of giving the successful suitor the fruits of his litigation." It is true that many states have enacted statutes regulating proceedings as for contempt in civil cases, and the decisions upon the subject are somewhat conflicting, and almost irreconcilable. Upon this subject the supreme court of Nevada, in *Phillips* v. *Welch*, 11 Nev. 187, says: "If the contempt consists in the refusal of a party to do something for the benefit or advantage of the opposite party which is ordered to be done, the process is civil, and he stands

committed until he complies with the order. The order in such cases is not punitive, but coercive. If, on the other hand, the contempt consists in the doing of a forbidden act injurious to the opposite party, the process is criminal, and conviction is followed by a penalty of fine or imprisonment, or both, which is purely punitive. In the former case the private party alone is interested in the enforcement of the order; and the moment he is satisfied, the imprisonment terminates. In the latter case the state alone is interested in the enforcement of the penalty. It is true the private party receives an incidental advantage from the infliction of the penalty; but it is precisely the same sort of advantage which accrues to the prosecuting witness in a case of assault and battery, the advantage being that the punishment operates *in terrorem,* and by that means has a tendency to prevent a repetition of the offense. The principle of distinction between the civil and criminal processes for contempt here indicated, though not expressly recognized in any of the cases that have fallen under our observation, is entirely consistent with all the decisions, and is the only means of rendering them consistent with each other. It may therefore be considered established by them." Rap. Contempt, §§ 21, 22.

From a careful inspection of the authorities, it is evident that a clear distinction exists, both upon principle and authority, between that class of cases where it is sought to vindicate the authority or dignity of the court, or where the contempt consists in the doing of a forbidden act, injurious to the opposite party, wherein the process is criminal or of a criminal nature, and wherein conviction is followed by a penalty of fine or imprisonment, or both, which is merely punitive, and that other class of contempts where the proceeding is remedial, and intended for the benefit of the opposite party, to

compel the doing or omission to do an act necessary to the administration of justice in enforcing some private right in a civil proceeding. This distinction between civil and criminal contempt is recognized in the following cases: *Lester* v. *People* (Ill. Sup.), 37 N. E. 1004; *Lester* v. *Berkowitz,* 125 Ill. 307, 17 N. E. 706; *Howard* v. *Durand,* 36 Ga. 346; *Crook* v. *People,* 16 Ill. 534; *Phillips* v. *Welch,* 11 Nev. 187; *Tome's Appeal,* 50 Pa. St. 285; *Cobb* v. *Black,* 34 Ga. 162; *Hawley* v. *Bennett,* 4 Paige, 163; *Androscoggin & K. R. Co.* v. *Androscoggin R. Co.,* 49 Me. 392; *State* v. *Knight* (S. D.), 54 N. W. 412; *Ruhl* v. *Ruhl,* 24 W. Va. 279; *Buck* v. *Buck,* 60 Ill. 105; *Robbins* v. *Gorham,* 25 N. Y. 588; *People* v. *Diedrich,* 141 Ill. 669, 30 N. E. 1038. In the case of *Lester* v. *People* (Ill. Sup.), 37 N. E. 1004, the court said: "When the contempt consists of something done or omitted in the presence of the court, tending to impede or interrupt its proceedings or lessen its dignity, or, out of its presence, in disregard or abuse of its process, or in doing some act injurious to a party protected by the order of the court, which has been forbidden by its order, the proceeding is punitive, and is inflicted by way of punishment for the wrongful act, and to vindicate the authority and dignity of the people, as represented in and by their judicial tribunals. In such cases, although the application for attachment, when necessary to be made, may be made and filed in the original cause, the contempt proceeding will be a distinct case, criminal in its nature, and may properly be docketed and carried on as such, and the judgment entered therein will exhaust the power of the court to further punish for the same act and offense. *Ex parte Kearney,* 7 Wheat. 42; *Cartwright's Case,* 114 Mass. 238; *New Orleans* v. *Steamship Co.,* 20 Wall. 392; *Ingraham* v. *People,* 94 Ill. 428. Cases of that character are clearly distinguishable from cases where

a party to a civil suit, having the right to demand that
the other party do some act for his benefit and to his
advantage in the litigation, obtains an order of the court
commanding it to be done; and upon refusal, the court
by way of execution of its order proceeds as if for con-
tempt, for the purpose of advancing the civil remedy
of the other party to the suit.   In this class of cases,
while the authority of the court will be incidentally vindi-
cated, its power has been called into exercise for the
benefit of a private litigant, and not in the public inter-
est, or to vindicate any public right, and the proceeding
is regarded as coercive merely.   In *People* v. *Court of
Oyer & Terminer*, 101 N. Y. 247, 4 N. E. 259, the court
say: 'If imprisonment is ordered, it is awarded, not as
punishment, but as a means to an end, and that end the
benefit of the suitor in some act or omission compelled,
which is essential to his particular rights of person or
property.   *   *   *   If · in this class of cases, there
exist traces of vindication of public authority, they are
faint, and are utterly lost in the characteristic, which
is strongly predominant, of protection to private rights
imperiled, or indemnity for such rights defeated.' "
*Lester* v. *People* Ill. 150, 408.

In the light of these authorities, and those from our
own court upon the subject, which are entirely consist-
ent therewith, we must hold that the order to pay ali-
mony and costs in this case was a proceeding remedial
in its nature, and intended for the benefit and advantage
of the respondent, to compel the doing of an act neces-
sary and proper in the administration of justice in the
enforcement of a private right, decreed in a civil pro-
ceeding for her benefit, and that an appeal lies from
such order.   On the subject of this being an appealable
order, see *People* v. *O'Neil*, 47 Cal. 109; *Ex parte Hollis*,
59 Cal. 405; Hayne, New Trials & App. p. 584, § 196;

Comp. Laws Utah, 1888, §§ 3632-3635; *State* v. *Knight*
(S. D.), 54 N. W. 412.

This proceeding was commenced after decree allow-
ing alimony, and after the time had expired for an
appeal from the judgment in the original case.    The
record shows that prior to the commencement of these
proceedings, in April, 1892, the respondent had agreed
to receive $500 in full for her interest in her husband's
property, etc.    This sum was subsequently paid from
the sale of a house and lot held as a homestead.    The
appellant contends that this was a settlement of all
claims for alimony and support of the wife and minor
child.    The testimony in the case tends to show,
although there is some conflict, that after the divorce
proceedings were commenced, the appellant agreed to
pay the sum afterwards allowed as alimony.    The
decree was granted allowing alimony, and was not
appealed from.    The court on application, on a full
hearing, refused to modify this decree, as would have
been allowable under section 2606, Comp. Laws Utah,
1888.    We see no good reason for disturbing such order.

The question of the ability of the appellant to pay
was a question of fact, to be determined by the court
making the order.    Upon the evidence presented upon
that hearing, the court found that he was able to com-
ply with the order, and he was found guilty of contempt
in refusing to comply with it.    *Ex parte Cottrell*, 59 Cal.
418.    We think such finding is supported by the evi-
dence.    Any man attaining his majority, who volun-
tarily enters into the marital relation, should be willing
to assume those ordinary and reasonable obligations of
a husband which naturally follow and attend such rela-
tion.    These duties of the husband require him to pro-
vide the wife and children with a reasonable and suit-
able maintenance during the continuance of that

relation, and in case of separation and divorce occasioned by his own fault, he should not complain that the duties so assumed should remain a continuing obligation upon his part.

Upon the record as presented, we find no reversible error. The judgment and orders of the district court are affirmed, with costs.

ZANE, C. J., and YOUNG, District Judge, concur.