## FOREMAN v. FOREMAN.

No. 6958.  Decided January 6, 1947.  (176 P. 2d 165.)

See 17 C. J. S., Contempt, sec. 121; 3 Am. Jur. 171.

See also 111 Utah 72, 176 P. 2d 144.

*Barclay & Barclay,* of Salt Lake City, for appellant.

*George W. Latimer,* of Salt Lake City, *Grover A. Giles,* Atty. Gen., and *Calvin L. Rampton,* Deputy Atty. Gen., for respondent.

PRATT, Justice.

This matter comes before the Court on the motion of the Attorney General of the State of Utah to dismiss the appeal of L. J. Barclay upon the grounds and for the reason that the contempt sentence was criminal in nature and the State of Utah, the adverse party in such a proceeding, was not served with notice of appeal within the time allowed by law.

The facts which have a bearing on the appeal are these: L. J. Barclay was counsel for Pearl Cooper Foreman in the case of *Pearl Cooper Foreman* v. *Otto C. Foreman.* At the conclusion of the trial, the trial judge ordered that the plaintiff, Pearl Cooper Foreman, deliver certain bonds which were in the names of the plaintiff and the defendant, to the defendant, Otto C. Foreman, the delivery to be on said 15th day of February—as the Court stated it: "forthwith today." This order made orally by the Court on February 15, 1946, was never obeyed by Pearl Cooper Foreman. On February 16, 1946, Mr. Foreman obtained an order directing Mrs. Foreman to appear on February 20, 1946, and show cause why she should not be punished for contempt for, "her misconduct in failing to obey the order of

said Court." On that day Pearl Cooper Foreman appeared with her counsel L. J. Barclay. Mr. George W. Latimer, counsel for Otto C. Foreman, was present and was sworn and testified to the effect that the bonds were never delivered. L. J. Barclay was then sworn and testified in effect that the bonds had been delivered to his brother, a partner, in his office February 15, 1946, and that he was not aware of that fact on the 15th. The Court directed Mr. Barclay to produce the bonds and then recessed for thirty minutes. After the bonds had been produced and delivered to Mr. Latimer, Mr. David Barclay, the partner, and Pearl Cooper Foreman were sworn and testified in defense of that failure. Both Mr. Foreman and Mrs. Foreman having rested, the following statement was made by the Court:

"Well, I have been horsed a lot of times in my lifetime, but I have never seen a woman that would sit in court—I think Mrs. Foreman has the idea that a court is for no purpose except to pull wool over the eyes. I think her counsel couldn't be as ignorant as he has appeared to be, to sit here and stipulate that money would be held, when his client —he must have known she had spent it. I think Mr. Barclay's conduct is reprehensible unbecoming a lawyer, and not gentlemanly. Therefore, I am going not only to hold this witness in contempt for failing to deliver those bonds; I sentence you thirty days in jail for not complying with the order of court. Mr. Barclay, I fine you fifty dollars for your delaying tactics in making necessary this suit and in not bringing those bonds this morning, and I order you held forthwith until you pay that money. Are you able to pay it? [This sentence was subsequently changed to $50.00 and to serve 5 days in jail, the jail sentence to be suspended upon payment of fine.]

"Mr. Barclay: No, Your Honor. May I have time?

"The Court: How long will it take?

"Mr. Barclay: May I have twenty-four hours?

"The Court: No, sir. You may have thirty minutes to pay this fine. I have been horsed a lot of times, but never so flagrantly as I have here."

Thereafter the judge of the lower court signed and filed findings of fact, conclusions of law and, "Order Convicting of Contempt," from which the following quotations are extracted.

From the Findings of Fact:

"* * * that L. J. Barclay had been informed by said plaintiff that she had disposed of some of the property prior to the hearing; that said L. J. Barclay failed and neglected to so inform the Court or the counsel for the said defendant. * * * Judge of the above entitled Court at the conclusion of the trial of the divorce proceedings, while plaintiff and her counsel were present in Court, ordered the plaintiff to deliver to said defendant or his attorney certain United States Government bonds which plaintiff had in her possession and was keeping in a safety deposit box of the Utah State National Bank of Salt Lake City, Utah; * * * that said Order provided that delivery of said bonds should be made to the defendant or his attorney on the 15th day of February, 1946; * * *

"That defendant's attorney * * * called Mr. L. J. Barclay offering to go to Mr. Barclay's office and pick up the bonds, but defendant's attorney was informed by Mr. L. J. Barclay that he did not have the bonds and that it would be useless for him to make the trip as the bonds were not available.

"That on the 16th day of February, 1946, the above entitled Court issued an Order for plaintiff to Show Cause why plaintiff should not be punished for contempt for failure to comply with the order and the same was personally served upon said plaintiff * * * requiring her to appear before the Honorable A. H. Ellett and show cause, on the 20th Day of February, 1946, at 9:30 A. M., why she should not be punished for contempt of Court for willfully failing to comply with said order.

"* * * that up to and including the time the hearing was held on the order to Show Cause, plaintiff and her attorney had refused to comply with the Court Order, and the bonds had not been delivered at the time.

"That during the hearing on the Order to Show Cause, the bonds were in the possession of the plaintiff's attorney, Mr. L. J. Barclay, at his office in the McIntyre Building in Salt Lake City, Utah, and had been since the 16th day of February, 1946; that L. J. Barclay had refused to bring the bonds with him the morning of the hearing on the Order to Show Cause; that the Court directed Mr. Barclay to produce the bonds within thirty (30) minutes and declared a recess for this purpose; and that at the expiration of the recess plaintiff's attorney did then produce forty (40) twenty-five ($25.00) dollar bonds, one (1) fifty ($50.00) dollar bond, and two (2) one hundred ($100.00) dollar bonds.

"That said bonds were delivered to the office of L. J. Barclay on the 16th day of February, 1946, and they remained in his possession from that date until the further order of the Court made on the 20th day of February, 1946; that L. J. Barclay was well aware of the order

of the Court, had knowledge on the 18th day of February, 1946, that an Order to Show Cause had been issued by the above entitled Court, and yet took no action and made no effort to have the order complied with.

"That L. J. Barclay in his actions as hereinabove set forth, wilfully and deliberately interferred with and delayed the orderly conduct of the Court; wilfully and deliberately disregarded and disobeyed a lawful order of the Court, and wilfully and deliberately refused to bring the bonds to Court with him the morning of the hearing on the Order to Show Cause, well knowing that the plaintiff was to appear and make showing why she should not be punished for her failure to comply with the order to deliver the bonds, and wilfully and deliberately showed an utter disrespect for the process and order of the Court.
\* \* \*

"That at all times from the 16th day of February to the 20th day of February, 1946, L. J. Barclay was able to make delivery of the bonds delivered to him by plaintiff on February 16th, 1946."

### From the Conclusions of Law:

"That L. J. Barclay has wilfully and deliberately disobeyed and refused to comply with a lawful Court order made on the 15th day of February, 1946, requiring delivery of certain United States bonds to said defendant or his attorney.

"That L. J. Barclay was at all times able to comply with the order made by the above entitled Court on the 15th of February, 1946.

"That L. J. Barclay wilfully and deliberately interferred with and delayed the orderly trial of the Order to Show Cause in the above entitled matter, and wilfully and deliberately interferred with and delayed the orderly conduct of the Court.

"That L. J. Barclay failed and refused to make a full and fair disclosure of the facts on the original Order to Show Cause held before the Honorable M. J. Bronson, on the 26th day of November, 1945.

"That L. J. Barclay is guilty of contempt of Court, and has not purged himself of said contempt.

"That certain of the contemptuous acts were committed in the presence of the Honorable A. H. Ellett, Judge of the above entitled Court.

"That L. J. Barclay be fined fifty ($50.00) dollars, and serve five (5) days in jail, the jail sentence to be suspended upon payment of the fine, and that he be committed to the custody of the Sheriff of Salt Lake County for the execution of said sentence."

Upon these findings and conclusions the Court made an "Order Convicting of Contempt," reciting many of the same facts.

The notice of appeal in this case was served only upon counsel for Mr. Foreman. No one was served for and on behalf of the State of Utah.

There is the one issue involved: Is the contempt proceedings in the nature of a civil proceeding or is it in the nature of a criminal proceeding?

We believe that Mr. Justice Stone, in the case of *Lamb* v. *Cramer,* 285 U. S. 217, at page 220, 52 S. Ct. 315, at page 316, 76 L. Ed. 715, sets out clearly and concisely the rule for determining the nature of such proceedings. He said:

> "It is the purpose of the punishment rather, than the character of the act punished, which determines whether the proceeding is for civil or criminal contempt."

In the case of *Snow* v. *Snow,* 13 Utah 15, 43 P. 620, this Supreme Court has discussed rather thoroughly the distinctions between the two proceedings. We shall not quote that case here, but shall merely attempt to apply those principles to this case. However there are certain preliminary matters that deserve some mention. Our Code [Chapter 45 of Title 104—Civil Procedure, see also Sec. 103-1-7 and 103-1-26] expresses no distinction between a proceeding in the nature of a civil proceeding and one in the nature of a criminal proceeding. A maximum fine of $200 is fixed and a maximum jail sentence of 30 days either or both of which may be imposed upon conviction (Sec. 104-45-10). If a party litigant suffers a loss or injury as a result of the contemptuous conduct the Court may award damages plus costs and expenses (Sec. 104-45-11). If the contempt consists of an omission to perform an act enjoined by law, which it is within the power of the accused to perform, he may be imprisoned until he shall perform, or until released by the Court (Sec. 104-45-12). Obviously, the application of these latter two sections viewed in the light of the discussion in *Snow* v. *Snow,* is civil in nature. See, *Davidson* v. *Munsey,* 29 Utah 181, 80 P. 743; also *Utah Power & Light Co.* v. *Richmond Irr. Co.,* 80 Utah 105, 13

P. 2d 320. The fine or the incarceration ordered in conjunction with the relief afforded the litigant is considered secondary to the granting of that relief even though it has the effect of vindicating the authority of the Court. In each of these two cases, the party litigant who is the beneficiary of the Court's Order is interested in the result thereof, and in case of an appeal is interested in upholding the Court's Order in order to establish and/or satisfy his rights.

On the other hand, if the contempt judgment is merely one of fine and/or imprisonment (Sec. 104-45-10), it is considered as one to vindicate the authority of the Court— to prevent the obstruction of, interference with, or the embarrassment of the orderly process of the Court. It is considered a matter of interest to each of us as a citizen, but not to each of us individually as a party litigant attempting to establish his rights as such an individual. It is criminal in nature. In case of an appeal of such an order, the citizen who happens to be a litigant in the case in which the contempt occurred should not be expected to bear the burden and the expense of upholding the order of the Court, any more than any other citizen selected at random. In matters of public interest we have public officials to represent us. The litigant citizen does not desire to represent us and though we might appreciate his doing so it is a duty we should not impose upon him. The defense of such an order is a public duty, and requires the services of the proper public official. Notice of the appeal of such an order should be served upon the proper public official, that the public may have its day in court to defend the Court in its efforts to vindicate its authority.

Returning to the present case. It is obvious from a reading of the remarks of the Court, and also from a reading of its findings of fact and conclusions of law together with the sentence imposed that the sole purpose of the adjudication of contempt and the imposition of the fine was that of the upholding the dignity and powers of courts generally and this court in particular. It was in the public interest, not in the interest of Mr. Foreman as a participant in the litigation.

The adjudication of contempt and the imposition of sentence occurred after Mr. Barclay performed. No effort was made to induce him to further action by the imposition of a penalty. In fact there does not appear to have been anything further that he could have done. No attempt was made to compensate Mr. Foreman for any loss or injury incident to Mr. Barclay's alleged contempt. The Court's action was purely punitive. In its nature the proceeding was criminal.

Neither Mr. Foreman nor his counsel sought any relief from the Court the granting of which either expressly or impliedly included such results—the matter was not an issue under the pleadings. As the action of the Court was in the public interest, neither Mr. Foreman nor his counsel was an adverse party nor the proper party upon whom to serve notice of appeal. In line with the principles of this decision we invite attention to the following authorities. *Auto Highball Co. et al.* v. *Sibbett et al.,* 11 Ga. App. 618, 75 S. E. 914; *Whitaker* v. *McBride,* 5 Neb. Unof. 411, 98 N. W. 877, and *Whipple* v. *Nelson,* 138 Neb. 514, 293 N. W. 382.

It should be understood that this decision is limited to the facts of this case; and it does not follow that had there been an element of coercion in the lower court's order of contempt, this decision would have been the same.

We are of the opinion that the motion to dismiss the appeal as to Mr. Barclay should be granted. It is so ordered.

McDONOUGH and WOLFE, JJ., concur.

LARSON, C. J., dissents.

WADE, Justice (dissenting).

I dissent. Courts generally make the distinction between civil and criminal contempt made in the prevailing opinion. But I do not think it necessarily follows that in order to get jurisdiction of the case on appeal notice thereof must be served on an attorney for the state. I know of no Utah case which so holds. I believe such a holding is contrary to the universal practice in such case in this state in the past, and would create great confusion without any compen-

sating benefits. It is natural for an attorney handling this type of contempt case, since the contempt was committed in the course of the disposition of a civil action, to treat it as a civil action, and I think there is no danger of any injustice or hardship resulting if we hold that for the purpose of perfecting an appeal this is a civil and not a criminal action.

Neither the case of *Snow* v. *Snow,* 13 Utah 15, 43 P. 620, nor any of the cases cited therein involved the question here presented. Those cases held that in a criminal contempt case where the trial court had jurisdiction to find the contempt no appeal would lie from such finding and a number of appeals were dismissed on that ground. In one of them *Ex parte Whitmore,* 9 Utah 441, 35 P. 524, we dismissed the appeal on the ground that it was a criminal contempt and therefore there was no appeal therefrom. The contempt in that case was the violation of an injunction order in an irrigation case. No attorney for the state appeared in that case to uphold the dignity of the court and apparently none was served, but no mention of that fact was made in the opinion and it was not dismissed on that ground. Since the state constitution was adopted we have apparently held that an appeal will lie from a criminal contempt. *Utah Power and Light Co.* v. *Richmond Irrigation Co.,* 80 Utah 105, 13 P. 2d 320. In that case as well as a number of others we have taken jurisdiction of and decided on the merits appeals involving a criminal contempt, wherein no attorney representing the state has appeared as counsel and apparently no service has been made on such an attorney. *Gunnison Irrigation Co.* v. *Peterson,* 74 Utah 460, 280 P. 715; *Openshaw* v. *Young,* 107 Utah 408, 159 P. 2d 123. Apparently this question has never been raised before, and in all of these cases where the contempt finding was made for disobedience to an order in a civil action, it has never occurred to any one that because the order was to uphold the dignity of the court and did not necessarily result in the enforcement of the civil judgment, that it was a criminal contempt and the attorney for the state should be brought

into the action. In *Utah Power and Light Co.* v. *Richmond Irrigation Co.,* supra [80 Utah 105, 13 P. 2d 323], we said:

"* * * It has been said that a civil contempt consists in failing to do something ordered to be done by a court in a civil action for the benefit of the opposing party therein."

It is of paramount importance that there be no doubt on whom notice of an appeal should be served. Ordinarily the distinction between a criminal and civil action is so well defined that no one could be confused therein. There is no such express distinction whatever made in our statute on contempt. Almost invariably a contempt occurs in the course of the disposition of another case. Very often a complete violation of a court order has occurred and cannot be remedied in the future, but the court in order to uphold its dignity, and for the purpose of impressing on the party who committed the contempt that he cannot in the future continue such actions, metes out a judgment purely punitive in nature, in that it is not conditioned on the performance of the court order in the future. Such a case according to the distinction made in the early cases in this court would be a criminal contempt although the proceedings in contempt was instituted as a part of a civil action and the punishment in reality was ordered largely for the purpose of warning the offending party against future repetition of such contemptuous acts. Thus the contempt judgment inured to the benefit of the opposing party in the civil action. According to the distinction made in the prevailing opinion a civil contempt might and often does grow out of a criminal action, and a criminal contempt is committed in the course of a civil action. If we are to hold that this court does not get judisdiction of this appeal because it is a criminal contempt and the attorney for the state was not served with the notice of appeal, we will create a situation wherein attorneys will not be sure how to perfect an appeal in a contempt case, and will cause many such cases to be dismissed on a technicality and not on the merits, a situation which in my opinion would be highly undesirable. I

have examined many contempt cases which have been appealed to this court and have found none where an attorney representing the state has appeared and apparently none where such an attorney has been served with notice of appeal, where the finding in contempt was for disobedience to an order of the court in a civil action.

The prevailing opinion suggests that it is unfair to require the defendant's attorney to defend, on appeal, the court's judgment of contempt against opposing counsel, since the order was not made for his benefit or on his application but on the court's own motion. While it is technically true that defendant made no application for an order finding plaintiff's attorney guilty of contempt, such judgment was made only after the court had coerced plaintiff and her counsel to turn over to defendant certain bonds in accordance with the court's orders, and after the court had at defendant's request cited the plaintiff into court on a contempt charge and had threatened to commit both her and her attorney for contempt. Usually under such circumstances opposing party and counsel are willing to defend the court's actions, and in the cases above cited seem to have done so without any question. In any event every attorney is an officer of the court before which he practices, and as such is subject to being required to aid the court in its administration of justice. As such he may be required to appear on behalf of a litigant who is before the court, or to advise the court on the law in a case where he is not otherwise retained, and certainly he may be required to defend the dignity of the court in a contempt case like the one at bar. Of course if for any reason an attorney feels that it is inadvisable for him to appear in such capacity he may always explain the matter to the judge and ask to be relieved therefrom. However, we are not here called upon to determine what the proper procedure would be in such a case, our only question here is whether service of the notice of appeal on defendant's attorney was sufficient to give this court jurisdiction of this appeal.

Except in the case of certain writs the judge who renders the decision appealed from is not served with notice of appeal. Since an appeal from a judgment of contempt is so closely connected with the judge's conduct of his court service of notice of an appeal therefrom on the judge who made the order would be proper and sufficient to confer jurisdiction of such appeal on the appellate court. This would be particularly appropriate since in some contempt cases the act of contempt has no connection with a disobedience to an order of the court made in another action.

In this case, the court, in a divorce action, ordered the plaintiff to turn over to the defendant forthwith certain bonds. This plaintiff failed to do but did turn them over to her attorney and was cited into court to show cause why she should not be punished for contempt of court. She appeared in answer to the citation with her attorney but without the bonds. When placed on the witness stand she testified that she had turned them over to her attorney and he stated they were in his office. The court thereupon recessed for 30 minutes and gave them an opportunity to produce the bonds under the threat that in case they failed therein they would be committed for contempt. Thereupon the bonds were produced, and thereafter the court found both plaintiff and her attorney guilty of contempt. The only thing in the nature of the contempt judgment against the attorney that made it criminal any more than plaintiff's contempt was the fact that the court gave judgment against plaintiff for damages, and the attorney was not formally cited into court to show cause why he should not be punished for contempt. Yet there is no claim that this court failed to get jurisdiction of the appeal of the plaintiff because an attorney for the state was not served with notice of the appeal. No doubt plaintiff's contempt was committed acting under the advice of her attorney, and the threat of contempt against both of them probably caused the bonds to be produced. On the other hand if the court had found them both guilty of contempt before the recess and committed them until the bonds were produced no one would contend

that service of the notice of appeal on defendant's counsel did not give this court jurisdiction thereof. Since such a slight difference is required to change a case from a criminal to a civil contempt only confusion and uncertainty can result from a holding that in a criminal contempt case service must be made on the attorney for the state. I therefore think the case should be determined on its merits.