GUNNISON IRR. CO. v. PETERSON.

No. 4718.   Decided May 9, 1929.   (280 P. 715.)
Rehearing Denied October 1, 1929.

*A. H. Christenson,* of Provo, for appellant.

*Lewis Larson,* of Manti, for respondent.

BATES, District Judge.

This is an appeal from a judgment of the district court of Sanpete county convicting the defendant of contempt of court.

The affidavit upon which the order directing defendant to appear and show cause why he should not be punished for contempt of court has attached to it and made a part of it a copy of a decree of the court entered December 29, 1920. The defendant admits that the decree was rendered and that it was a valid and existing judgment of the court. The following provisions of the decree are material to this proceeding:

"1. That the source of water involved in this action, and affected by this decree, are described as follows:

"The waters of Sanpitch river, flowing between the intake of plaintiff's reservoir, and the point of diversion of any party hereto situated on said river;

"The waters of Six-Mile creek, except fifty per cent thereof, diverted and claimed at Sterling, Utah, by persons not parties to this action;

"Two and fifteen hundred eighteen-ten thousandths (2.1518) cubic feet per second of time, of the waters of Nine-Mile Creek. (The remainder of the waters of said creek being owned absolutely by Highland Canal Company.)

"The waters of Twelve-Mile creek, except forty-two per cent thereof, diverted and claimed at Mayfield, Utah, by persons not parties to this action.

"The waters stored in plaintiff's reservoir, in Sanpitch River situated between Manti City and Gunnison City.

"All in the County of Sanpete, State of Utah.

"2. That the plaintiff, the Gunnison Irrigation Company, is the owner of and entitled to divert and use, from the combined sources and supply of water involved in this action, and hereinbefore described, the following described quantities of water, during the times and for the uses, to wit:

"A flow of water equal to one hundred forty-five (145) cubic feet per second of time, for irrigation of its said seven thousand two hundred fifty acres of land, from the first day of April, until the 15th day of June, of each year.

"A flow of water equal to one hundred eleven and 35-65 (111, 35-65) cubic feet per second of time, for irrigation of its said seven thousand two hundred fifty acres of land, from the 15th day of June, until the 1st day of October of each year.

"A flow of water equal to twenty-seven and 84-100 (27.84) cubic feet per second of time, for the irrigation of one-fourth of their said seven thousand two hundred fifty acres of land, (or eighteen

hundred twelve and one-half acres thereof), from the first day of October, until the 1st day of November, of each year.

"A flow of water equal to two and one-half (2½) cubic feet per second of time for culinary, domestic and stock-watering purposes, by the plaintiff's stockholders, from the first day of April, until the 1st day of November of each year;

"A flow of water equal to ten (10) cubic feet per second of time, for culinary, domestic and stock-watering purposes, by the plaintiff's stockholders, from the 1st day of November, until the first day of April, of the succeeding year;

"That for the purpose of providing and insuring an adequate quantity of water to supply the plaintiff's uses as above set forth, the said plaintiff has the right to impound and store waters from all available sources in its said reservoir, each year, preferring such available periods and times for such storage when the defendants herein are unable to use any of said waters decreed to them, for irrigation purposes.

"That the aforesaid rights of said plaintiff are superior and paramount to any right of the defendants, or either of them, to the use of the said waters, or any part thereof.

"3. That subsequent and secondary to the said rights of the plaintiff the defendant is the owner of the right to divert and use from said sources during that period from the first day of April, until the 1st day of October, of each year, for the irrigation of his lands described in his amended answer, a volume of water equal to three-fourths cubic foot per second of time. * * *

"6. That the respective titles to the parties hereto, to the use of said waters as herein defined, is hereby quieted and confirmed, and the said parties to this action, and each of them, and each of their officers, agents, and employees, are hereby perpetually enjoined, restrained and forbidden to in any manner interfere with the rights of any other party hereto, or with his or its free use and enjoyment of said right, as herein decreed."

The decree also provides for the appointment of a commissioner to supervise and distribute the waters according to the terms of the decree and directs him to measure all allotments of water to the parties at the point of diversion from the stream from whence the water is diverted into a canal or ditch.

The affidavit further recites that the defendant had full knowledge of the contents of the said decree, and that on

numerous occasions beginning with May 19, 1927, and until June 30, 1927, he, in willful disregard of said decree and injunction and in contempt of the same and wrongfully and in disregard to the rights of the plaintiff, diverted and used for the purpose of irrigation a large quantity of waters so decreed to the plaintiff, and that he in open and flagrant contempt of such decree threatened to continue to divert such waters in disregard of the decree and the terms thereof.

Defendant demurred to the affidavit upon the ground that it does not state facts sufficient to constitute a cause of action against the defendant, and upon the ground that it is ambiguous, uncertain, and unintelligible, and that it cannot be ascertained therefrom what amount of water, under the decree mentioned in the application or affidavit, was contained in the water sources affected by the decree to which the plaintiff claims it was entitled when the defendant is alleged to have taken water belonging to the plaintiff; and that it cannot be ascertained from the affidavit what amount of water it is claimed by the plaintiff that defendant took belonging to the plaintiff. The demurrer was overruled, and the defendant answered.

In his answer defendant admits the entering of the decree and denies all other allegations. The defendant then, by way of further reason why the order to show cause should be dismissed, alleges in substance that the plaintiff corporation has assumed to take control of the water included in the decree and to determine when the defendant should receive water; and has always refused the defendant permission to take any water when he was entitled to it. Defendant also alleges that the plaintiff has never consented to have a commissioner appointed to distribute the water under the decree as provided therein, and has assumed by its superior ability and financial power to control the water and to keep defendant from receiving his rightful share.

Appellant urges that the demurrer should have been sustained for the reason that the facts pleaded do not amount to a contempt of court. It seems to be his position that the

allegations in the affidavit that the defendant took waters decreed to the Gunnison Irrigation Company is a conclusion of law, and that conclusions of law ought not to be considered in determining whether or not a pleading sets forth a sufficient cause of action. The rule of law contended for by appellant is undoubtedly correct, and should at all times be recognized by the court; but it is not so clear that it is applicable to the present case. The copy of the decree attached to and made a part of the affidavit specifically describes the waters awarded to the plaintiff and petitioner. The affidavit recites that the defendant took a portion of those waters and used them for irrigation in willful disregard of the decree and injunction, and in contempt of the same, and wrongfully and in disregard of the rights of the plaintiff; that he threatens to continue to divert such waters in disregard of the decree and the terms thereof. We think the recitals are statements of fact. The allegations were sufficient, and the demurrer was properly denied and overruled.

Appellant also insists that because plaintiff did not consent to the appointment of a commissioner to measure and distribute the water, and because plaintiff assumed to take control of the water and determine whether defendant should receive any water, plaintiff ought not to prevail in this proceeding. He has not called the attention of the court to any authority in support of this position, and we have been unable to find any. The right to the use of the waters awarded was not made dependent upon the appointment of a commissioner. Each of the parties to the action was entitled to the use of the water awarded him, and either of the parties had the right to apply to the court for the appointment of a commissioner to make proper distribution. If the defendant violated the terms of the decree, he cannot purge himself of the contempt by showing that no commissioner was appointed.

Neither is it of any avail to the appellant that the plaintiff did not consent to the appointment of a commissioner,

nor that it took full control. The court retained jurisdiction, authority, and power to appoint a commissioner. No doubt it would have performed this duty had its attention been called to the matter. The consent or nonconsent of the plaintiff was not material.

The entire question to be determined in this proceeding is whether the defendant in fact took or diverted water decreed to plaintiff as alleged in the affidavit, without plaintiff's consent and to its injury. The pleadings and proofs suggest that the defendant believed he had ■ a right to take the water. But that cannot be a defense to the charge. It has frequently been said by the courts that good faith, ignorance of law, or acting upon the advice of counsel, is not a defense. In *Rodgers* v. *Pitt* (C. C.) 89 F. 424, 429, the court used the following language:

"The defendant in this case was bound to obey the injunction, and, when he interfered with the court's order, he was acting at his peril. He certainly ought not to have acted upon his own judgment as to what his rights were, when it was manifest that his acts would, at least, amount to a technical violation of the terms of the injunction. It was not for him to set up his own opinion as to the meaning and effect of the injunction. If he entertained any doubt as to what he might do without violating the injunction, he should have applied to the court for a modification of the injunction, or for the privilege of doing certain acts which, by the advice of counsel, he claims he had the right to do."

See also *Weston* v. *Roper Lumber Co.*, 158 N. C. 270, 73 S. E. 799, Ann. Cas. 1913D, 373.

Each of these parties undoubtedly acted at his peril when he proceeded to use the waters so adjudicated in the face of the restraining orders issued without the appointment of a commissioner. If either took water be- ■ longing to the other against his will, whether in good faith, under a misapprehension of the terms of the decree, or under mistake of law, such party thereby came into contempt of the court.

The court found as a fact that the decree was rendered in form as pleaded; that the defendant had full knowledge of the terms of the decree; and that on May 19, 1927, defendant, in willful disregard of the decree and the injunction embodied in paragraph 6 of the decree, and in contempt of the same, and wrongfully and in disregard of the rights of the plaintiff, diverted and used a large quantity of the waters decreed to plaintiff, and that he so continued to wrongfully divert and use such waters until June 30, 1927.

The following facts are fairly established by the testimony: For several years the flow of water in the Sanpitch river has been below normal. Since 1920 there has been no commissioner appointed by the court for the measurement of the waters and neither party to the action has ever made request for such appointment. During all those years plaintiff has used the entire flow and prevented the defendant Peterson from using any, claiming, under its construction of the decree, that it was its right so to do. During that entire period of time defendant has insisted that there was water available at different times to supply his secondary right, but he has not received it. From May 19 to June 30, 1927, defendant repeatedly, and almost constantly, took water from the sources of supply, claiming there was sufficient in the stream to supply his right. The plaintiff resisted his taking it and insisted that there was none there for him. The stream flow of Sanpitch river and its tributaries during the months of May and June, 1927, fluctuated considerably. The streams were larger during the night than they were in the daytime. There were several diversions of water made by plaintiff at different points along the river. The water so diverted was conducted onto lands within the Sanpitch river basin and used for purposes of irrigation. The return flow from the irrigation of these lands and seeps and springs along the river channel augmented the natural flow of the river available to supply the requirements of plaintiff. At no time since the decree was entered in December, 1920, has the water supply been meas-

ured where the waters are diverted from the stream, as required by the decree. During the months of April, May, June, and July of 1927, measurements were made about once a week by an engineer under the employ of plaintiff at two places. One place of measurement was 75 feet below the State Road Bridge at Christianburg, and the other place of measurement was on Twelve-Mile creek about 40 feet above the intake of the Highland Canal. Measurements at these two places gave the amount of available water at the time of measurement, less the return flow and the seeps and springs which were along the channel of the streams below the point of measurement. There is no evidence in the record from which the amount of water in these seeps and springs and in the return flow can be determined.

The measurements as made show the following amounts of water in the streams on the dates indicated:

April 24, 125.58 cubic feet per second.
May   15, 162.67 cubic feet per second.
May   22, 118.90 cubic feet per second.
May   29,   95.80 cubic feet per second.
June 12, 172.24 cubic feet per second.
June 19, 147.61 cubic feet per second.
June 26, 139.56 cubic feet per second.

It will be observed that three of the measurements exceed the 147.50 cubic feet per second awarded in the decree to plaintiff. The remaining four are under the amount of the award. Whether the unmeasured waters were sufficient to increase the streams to the amount of the award on either or all of the remaining four days cannot be determined from the record. Neither do these measurements determine whether on any day between May 19, 1927, and June 30, 1927, there was less than 147.50 cubic feet per second diverted by plaintiff into its canals, or whether the water taken by defendant on any day was necessary to make up the amount of water awarded to plaintiff.

The engineer employed by plaintiff made an estimate based on the aforesaid measurements of the amount of water flowing in the stream between April 1 and June 15, 1927. This estimate is 16,537.44 acre feet. Had the plaintiff received 147.50 cubic feet per second of time flowing constantly during the period from April 1st to June 15th, it would have amounted to 22,420 acre feet, or 5,882.56 acre feet more than the estimate of the engineer shows flowed in the system during the period. But if there is any value in this testimony it is, to say the least, greatly weakened by the testimony of the engineer making the estimate that it eliminates the seepage, springs, and return flow, and that he would not be able to say that plaintiff did not receive double that amount during the period.

The writer of this opinion has been unable to find any facts testified to by any of the witnesses which would justify the inference that on any day between May 19, 1927, and June 30, 1927, there was less than 147.50 cubic feet per second diverted by the plaintiff into its canals for irrigation, or that any water taken by the defendant prevented the plaintiff from diverting its 147.50 cubic feet of water per second on any day. Counsel for plaintiff has not called attention to any such evidence, but has contented himself with the suggestion that we read the record. That we have done. On the other hand, the record is replete with evidence to the effect that during the nighttime, when the streams were high, and frequently during the daytime, plaintiff diverted much more than the measurements show between May 19th and June 15th.

But plaintiff does not base its right to prevail in this proceeding upon a showing that the defendant, by taking water between the dates in question, prevented plaintiff from diverting 147.50 cubic feet per second of time. No attempt was made to establish that fact. Plaintiff's claim is that it can take all of the water of the system until it has diverted the total amount decreed to it for the entire irri-

gation season.  Or, in other words, that it can take all the
water decreed to it for the irrigation season during the first
period or during the first and second periods.  Plaintiff
claims that it is its right to defer the defendant in the en-
joyment of his rights until fall if it so desires, and that it
can take all the available supply regardless of time until
it has diverted its allotment for the entire season.  That is
the construction of the decree adopted by the learned trial
court.  This does not appear from the findings, conclusions,
or judgment of  conviction, but it  does so appear in the
court's comments at the conclusion of the trial which is part
of the record before us.  In its oral decision the court said:

> "The court will be guided by the interpretation of the decree
> which has been adopted by the plaintiff and assume it means what
> they contend it does mean respecting the use of the high waters.
> The court is of the opinion that the plaintiff is not limited from the
> period of April 1st to June 15th to the use of only 147.50 cubic feet
> per second continuous flow, and from June 15th to October 1st, the
> plaintiff is not limited to 111 35/65 plus the culinary water, but the
> plaintiff may take all the flow even though it exceeds the amount
> until there is enough water in the reservoir to satisfy plaintiff's
> allotment. * * * I think possibly there were times, under the evi-
> dence here, when the combined flow of the streams exceeded 147.50
> cubic feet per second, but under the theory which the court has
> adopted, that would not make any difference, because the evidence
> all goes to show that even so, there is not and has not been—there
> probably will not be—enough water in the system to satisfy the allot-
> ment to plaintiff. * * * The findings of fact therefore may be made
> in accordance with the allegations of the petition."

There is not in the findings of fact any finding of the
amount of water available for use on any given day the de-
fendant is alleged to have violated the terms of the decree.
The court found the decree to have been signed and entered
awarding to plaintiff the waters as described in the copy of
the decree attached to the affidavit and hereinbefore set
out, and that defendant in disregard of the rights of the
plaintiff diverted and used, for the purposes of irrigation,
a large quantity of the waters decreed to the plaintiff.

We think the findings in this proceeding must be construed in the light of the interpretation placed by the learned trial court upon the award to plaintiff in the decree. So measured, the trial court did not find that defendant took any of the waters of these streams when there was less than 147.50 cubic feet per second in addition to what defendant diverted, available for the use of plaintiff. Neither did the court find that the defendant diverted any of the waters of these streams between May 19 and June 30, 1927, when the flow of water, in addition to what defendant diverted, and available for the use of the plaintiff, was less than a flow of water equal to 147.50 cubic feet per second of time flowing constantly from April 1st to June 30th.

The court's finding that the defendant diverted and used for the purpose of irrigation a large quantity of the waters decreed to the Gunnison Irrigation Company, when considered in the light of the language of the decree and the interpretation placed thereon by the court in this proceeding, means neither more nor less than that the defendant diverted some of the waters before the plaintiff had diverted its allotment for the entire season, or before it could be determined that there was more than sufficient to supply plaintiff's award for the entire irrigation season. If the court's findings of fact so interpreted and limited constitute a violation of the decree, the judgment should be affirmed. The decree divides the irrigation season into three periods, the first period being from April 1st to June 15th; the second period being from June 15th to October 1st, and the third period from October 1st to November 1st of each year. It then makes a definite award of water that plaintiff is entitled to use during each of these periods. There is no language in the decree inferring that more water can be used in either of these periods than the amount specified for them respectively.

The findings of fact which support the decree alleged to have been violated contain the following recitals:

"That the quantity and area of land upon which the said plaintiff its stockholders and predecessors in interest have beneficially used the said waters from said river, creeks, and reservoir amounts in the aggregate to the total sum of seven thousand two hundred and fifty (7250) acres.

"That the quantity of water necessary for the proper and beneficial irrigation of the said lands of plaintiff's stockholders is as follows: From the 1st day of April until the 15th day of June of each year a volume of water equal to one hundred forty five (145) cubic feet per second of time flowing constantly; from the 15th day of June until the 1st day of November of each year, a volume of water equal to one hundred eleven and 35/65 cubic feet per second of the time, flowing constantly; from the 1st day of October to the 1st day of November of each year, a volume of water equal to twenty-seven and 84/100 cubic feet per second of time."

The court found the amount of water that could be beneficially used on the lands of plaintiff's stockholders during the first period and made the allowance accordingly. It has thus been judicially determined what amount of water can be beneficially used by plaintiff during the first period. That is a stream of water equal to 145 cubic feet per second flowing constantly. That is the amount decreed by the court. Any water in addition to that applied during the first period would not be a beneficial use. Beneficial use should be the basis, the measure, and the limit of all rights to the use of water in this state.

As heretofore indicated, there is no language in the decree inferring that the water allotted for the respective periods can be used by the plaintiff during any other period, and we think the court did not so intend. Whenever the plaintiff has used for irrigation a volume of water equal to 145 cubic feet per second of time flowing constantly between the 1st day of April and the 30th day of June of any year, the defendant is entitled to divert from any surplus there may be in the stream during that period the quantity of water decreed to him. Even though the plaintiff has not used for irrigation during a given period the amount of water for that period if it can reasonably be determined

that there will be flowing in the stream an amount of water available for the use of the parties in excess of the amount plaintiff is or will be entitled to divert during the particular term, the defendant is entitled to use the amount decreed to him out of the excess. This he should be permitted to do just as early in the season as such determination can be reasonably made.

In view of the conclusion reached relative to the proper interpretation of the decree alleged to have been violated, it follows, from what has been said heretofore, that there is no finding by the court that the defendant took or threatened to take water he was not entitled to take. Whether the court would have so found, had he construed the decree in harmony with the conclusions arrived at by this court, we are unable to determine.

The order is that the judgment be, and the same hereby is, reversed, and the cause remanded to the district court of Sanpete county with directions to that court to take such further proceedings therein as to it may seem proper, not inconsistent with the views herein expressed. Appellant to recover costs.

STRAUP, ELIAS HANSEN, EPHRAIM HANSON, and FOLLAND, JJ., concur.

CHERRY, C. J., being disqualified, did not participate herein.