UTAH POWER & LIGHT CO. v. RICHMOND
IRR. CO. et al.
HYRUM IRR. CO. et al. v. PETERSEN et al.

No. 5259. Decided July 22, 1932. (13 P. [2d] 320.)

*Leon Fonnesbeck,* of Logan, for appellants.

*Young & Bullen,* of Logan, for respondents.

MOFFAT, District Judge.

In this proceeding the defendants Petersen were cited into court upon an order to show cause why they should not be punished for contempt of court for alleged violation of a decree of the court, wherein the waters of the Blacksmith Fork river, as well as other waters tributary to Bear river, were adjudicated. It appears that a decree was entered on February 21, 1922, wherein defendants Petersen were awarded 3 cubic feet of water per second out of Curtis creek, a tributary to Blacksmith Fork river, for the irrigation of 155 acres on the lands referred to as the Hardware Ranch. It further appears that the Hyrum Irrigation Company, the Providence-Blacksmith Fork Irrigation Company, and the Millville Irrigation Company were parties to the decree, and were each awarded 40 cubic feet per second with a priority as of May 1, 1861, out of Blacksmith Fork river.

On behalf of the plaintiffs an affidavit was filed and an order issued, requiring the defendants Petersen to show cause why they should not be punished for contempt.

The affidavit is challenged by demurrer both general and special. The demurrer was overruled and thereupon the defendants answered. Issues were joined; testimony was taken; the defendants were found guilty of contempt of court. Findings of fact, conclusions of law, and judgment were made and entered. The defendants appeal.

Nineteen errors are assigned. Many of the errors assigned go to substantially the same point. Many others become subsidiary and immaterial when the case is approached from the analysis of the pleadings and principles involved. Analyzed accordingly, four matters require attention.

The defendants are brought before the court upon an affidavit. The affidavit and the judgment or decree in the

original case referred to, and to which the defendants were parties, form the basis of the charge, and as ■ pleadings take the place of a complaint. In order to arrive at the issues it is necessary to set out the affidavit in full. It is as follows:

"State of Utah, County of Cache, ss.:

"Joseph H. Fuhriman, being first duly sworn deposes and says: That the Hyrum Irrigation Company, a corporation, Providence-Blacksmith Fork Irigation Company, a corporation, Millville Irrigation Company, a corporation, and Ernest Petersen, Ernest Petersen, Jr., and Algernon Petersen, were, each and every one of them, defendants, with other defendants, in the above entitled action.

"That said action was brought for the purpose of adjudicating the waters of Blacksmth Fork River, a tributary of Bear River.

"That by the terms of the decree in said above entitled action the three corporations above named were each awarded 40 cubic feet per second of the flow of Blacksmith Fork River with a priority of May 1st, 1861, for use throughout the entire irrigation season of each year and 10 cubic feet for use from spring until July 10th each year.

"That the South Cache Milling Company, a corporation, was awarded in said decree 30 cubic feet per second of said flow with a priority of May 1, 1859, for use throughout the irrigation season of each year.

"That the three corporations above named purchased the rights of the South Cache Milling Company, a corporation, and are now the owner and holder of said rights.

"That all of the waters above mentioned are necessary for the proper irrigation of the lands of the stockholders of said corporations and said waters have been so used and placed to beneficial use.

"That by the terms of said decree the three individual defendants above name were jointly awarded 3 cubic feet per second of said flow with a priority as of May 1, 1870, which said priority is subsequent to and inferior to the priorities of the three corporate defendants above named.

"That the flow of said Blacksmith Fork River has decreased until it is much less than 150 cubic feet per second, to wit, not to exceed 72 cubic feet per second that that at all times in this complaint mentioned, the corporate defendants have been and now are entitled to the entire flow of said stream and that the individual defendants, nor either of them, are not entitled to the use of any of said flow.

"That on divers occasions prior to the year 1930, the corporate defendants have caused the individual defendants to be notified of

said decree and have been advised by said individual defendants that they are acquainted with the contents of the same.

"That on divers occasions and in particular on or about the 30th day of June, 1931, and since said stream has fallen below a flow of 120 cubic feet per second, and while said defendants had no right to the use of any of said water, the individual defendants an each of them, unlawfully, willfully, an intentionally diverted from said stream a flow of approximately 7 cubic feet per second and used the same to irrigate lands belonging to said defendants last mentioned.

"That said individuals have threatened, and now threaten and intend to continue to so divert said waters in violation of the terms and conditions of said decree and in contempt of the provisions thereof.

"That affiant is the President of the Providence-Blacksmith Fork Irrigation Company, a corporation, and authorized to make this affidavit on behalf of the three corporate defendants, and that he makes this affidavit on behalf of each and every one of said corporations.

"Wherefore affiant prays that an order be issued out of this court directing each of said defendants, Ernest Petersen, Ernest Petersen, Jr., and Algernon Petersen to show cause if any he has, why he should not be punished for contempt of this court, and for such other and further relief as to the court shall seem meet and proper including the costs of this action.

"J. H. Fuhriman.

"Subscribed and sworn to before me this 30th day of July, 1931. Ernest T. Young, Notary Public, Residing at Logan, Utah.

"Commission expires: 10—24—32."

To this affidavit a demurrer and an answer and further answer were filed. The demurrer attacked the sufficiency of the affidavit upon three grounds:

"1. That the said affidavit does not state and set forth facts sufficient to show any contempt on the part of these defendants for said decree.

"2. That said affidavit does not set forth facts showing any substantial loss of water to the said irrigation companies complaining, on account of alleged acts of these defendants or either of them.

"3. That the said affidavit is indefinite and uncertain in this that it can not be ascertained therefrom whether or not the said demurring defendants herein have acquired or initiated new and independent rights since the filing and entry of the said decree, nor whether or not the said defendants have claimed and used the

property adversely and acquired title to the use of the said water by adverse possession since the entry of the said decree."

The answer admits that on or about the 21st day of February, 1922, the court made and entered a decree in the original action, *Utah Power & Light Company* v. *Richmond Irrigation Company et al.*, by the terms of which 40 second feet of water out of the Blacksmith Fork river were awarded to the Hyrum Irrigation Company, and a like amount to the Millville Irrigation Company, and a like amount to the Providence-Blacksmith Fork Irrigation Company with a priority in each case of May 1, 1861, and that 3 second feet were awarded to the answering defendants, with a priority of May 1, 1870.

The answer then alleges that the decree is erroneous in certain particulars specified. This matter as well as certain matters relating to the striking of certain allegations from the further answer will be discussed later.

The first question raised upon the demurrer of the defendants is that the affidavit does not state sufficient facts to show any contempt on the part of the defendants; and, second, no facts are set forth showing any loss of water on account of the alleged acts of the defendants; and, third, that it cannot be ascertained whether the defendants have acquired or initiated any new and independent rights, or any adverse rights since the entry of the decree.

The affidavit charging the contempt makes reference to the original decree. It charges that the affiant is doing so on behalf of the Providence-Blacksmith Fork Irigation Company, of which he is president; that by the terms of the decree the three irrigation companies upon behalf of which the affidavit is made were awarded certain quantities of water, to wit, 40 second feet each; that the answering defendants Petersen were awarded 3 second feet; that the flow of the Blacksmith Fork river has decreased until the flow does not exceed 72 second feet; that the defendants have taken 7 second feet and threaten to and intend to continue

to divert water in violation of the terms of the decree, and in contempt of the provisions thereof.

We are clearly of the opinion the trial court was right in overruling the demurrer to the affidavit. The affidavit in this proceeding does not stand alone. It must be considered in connection with and in reference to the judgment or decree to which it refers and the violation of which it charges. The courts take judicial notice of their records of prior proceedings in the case. *Perrault* v. *Emporium Department Store Co.*, 83 Wash. 578, 145 P. 438; *Ivey* v. *State*, 21 Okl. Cr. R. 182, 206 P. 257; *Schallman* v. *Haas*, 33 Cal. App. 28, 164 P. 336; *State* v. *Walker*, 78 Kan. 680, 97 P. 862, holding that in contempt proceedings it is not necessary that a copy of the judgment violated should be attached to the accusation.

In the case of *Doremus* v. *Root*, 23 Wash. 710, 63 P. 572, at page 576, 54 L. R. A. 649, the court says: "Certainly there is no rule of law which requires that such a judgment should either be pleaded or proved in order to make it available to all of the defendants [parties] against whom or in favor of whom it operates. The contrary view would imply that the court could not judicially notice its orders and judgments entered in the very cause before it." In the case of *State of Utah* v. *Bates*, 22 Utah 65, 61 P. 905, 83 Am. St. Rep. 768, this court held that: "A court will take notice of the records and prior proceedings in the same case." Other cases to the same effect might be cited.

There are authorities to the effect that a contempt proceeding may be regarded as an original and special proceeding, collateral to and independent of the cause in which the contempt arises. Such a position may and no doubt does depend largely upon the nature of the proceeding, the purpose desired to be accomplished, and the parties. Whether special, original, or collateral, is immaterial in so far as the question of judicial notice of the decree or judgment is concerned. The authorities seem to be unanimous that the

court will take judicial notice of the records and prior proceedings in the same case.

The prayer of the complaining affidavit seeks an order to show cause why the defendants should not be punished for contempt and for other and further relief.

The appellants (defendants) complain that there is no evidence to show that the plaintiffs have been injured, that the order which it is claimed the defendants violated was made for the benefit of the complaining companies, and that the proceeding is in the nature of a civil and not a criminal contempt; that there is no evidence to show the plaintiffs have been injured.

The affidavit, the decree, and the evidence of the parties show that the three complaining companies were each entitled to 40 second feet of water or a total of 120 second feet, with a priority of 1861, that the defendants were entitled to 3 second feet with a priority of 1870; and the evidence shows that the total flow at the time of the alleged violation of the decree was 72 second feet and that the defendants were taking approximately 7 second feet of water. These conditions alleged, admitted, and proved present a situation difficult to conceive how any other conclusion than the one reached by the trial court could have been arrived at, notwithstanding there are cases holding that if the contempt proceeding is civil in character it must be alleged and proved that there have been injuries to plaintiff. 32 C. J. 505; *People* v. *Diedrich,* 141 Ill. 665, 30 N. E. 1038.

Counsel for defendants argues that the contempt attempted to be charged is a civil contempt and therefore damages must be alleged and proved.

There are many cases making a distinction between a civil contempt and a criminal contempt, and while the distinction seems to have been discussed considerably in the cases, no very satisfactory basis of distinction seems to have been reached. It has been said that a civil contempt consists in failing to do something ordered to be done by a court in a civil action for the benefit of the opposing party therein.

In the case of Ex parte Whitmore, 9 Utah 441, 35 P. 524, 528, the court says:

"There is another class of contempt proceedings which are purely remedial in their character. This class embraces such contempt proceedings as were resorted to by a successful litigant in equity to secure the fruits of his litigation, in case of the refusal of the defeated party to obey the order or decree made in such action. Such a proceeding, while in form a contempt proceeding, was never instituted primarily to vindicate the court's authority, but for the sole purpose of giving the successful suitor the fruits of his litigation. * * *

"It would indeed seem anomalous that an appellate court should have the power to compel an inferior court to punish a criminal contempt, an insult to the judge or a willful breach of peace in open court, a willful disobedience of a lawful order or judgment which such inferior court had refused to punish, or that it should have the power to review the action of such inferior court, and discharge one whom that court had adjudged guilty of such contempt. 'It is true that the judge who presides over the court against which the contempt is directed is not regarded as having any personal interest in the matter. The law punishes the contemnor, out of no personal consideration for the judge. The punishment is not meted out as a "balm to hurt mind." Nor is there in the law aught of malice against him who is punished. The power is exercised by the court as the representative, in this respect, of the people,—the ultimate sovereigns,—and in their interest and for their good. The maintenance of the authoritly of the judiciary is indispensable to the stability of the government. Having power over neither the purse nor the sword, it is helpless and defenseless, open to wanton insult, the object of universal derision and contempt, unless the people have, by necessary implication, vested in the judiciary authority to assert its powers, to compel respect and obedience to its orders and decrees, and to preserve order and decorum in open court, by calling upon the physical power of the state to uphold this independent department of the government in its full integrity. The people, by the very act of creating a judicial department, necessarily vested in it this prerogative. This power to punish for contempt, which inheres in the very constitution of every court, is to be exercised solely for the public good, that a branch of the people's government may not lose its efficacy, and thus the government be brought to anarchy. But it does not at all follow that, because the state alone has any interest in the punishment of such a contempt, the power to punish it does not reside exclusively in the tribunal insulted or defied. On the contrary, there has been only one thought touching this ques-

tion. All the cases speak of this power as being lodged in only the tribunal towards which the contempt is directed.' Rap. Contempt, § 13, and cases cited."

The statute of Utah (sections 7058-7073, Comp. Laws Utah 1917) relating to contempt makes no distinction between a civil and a criminal contempt. Prior to the adoption of the Constitution, the Utah cases held that no appeal would lie from a criminal contempt. Since the adoption of the Constitution of the state of Utah, all final judgments seem to be appealable (article 8, § 9). In every contempt there seem to be at least two elements present. First, the violation of the order, judgment, or decree of the court, or a manifestation of disrespect of the court or its orders by act or statement. Secondly, the intention to violate the order, or judgment, or in cases the lack of ability to perform according to the requirements of the order or judgment, the failure to comply.

As to the question of intention or want of intention in the violation of injunctive orders, judgments, or decrees, knowledge of the order or judgment and its violation requires some affirmative act, therefore the intention is easily inferred from the circumstances. Where, however, it is a violation of an order, judgment, decree, or proceeding, remedial in its nature and intended for the benefit or advantage of the other party in a civil action, or to compel the doing of an act necessary and proper in the aministration of justice in the enforcement of a private right, the intention depends very largely upon the proof of ability to perform or the want of it. However, aside from the distinctions as to civil or criminal contempt, the statute seems to provide in a proper case for both civil and criminal administration in the same action.

Section 7067, Comp. Laws Utah 1917:

"Upon the answer and evidence taken, the court or judge must determine whether the person proceeded against is guilty of the contempt charged and if it be adjudged that he is guilty of the contempt,

a fine may be imposed on him not exceeding $200, or he may be imprisoned not exceeding thirty days, or both."

## Section 7068, Comp. Laws Utah 1917:

"If an actual loss or injury to a party in an action or special proceeding, prejudicial to his right therein, is caused by the contempt, the court, in addition to the fine or imprisonment imposed for the contempt, or in place thereof may order the person proceeded against to pay the party aggrieved a sum of money sufficient to indemnify him and to satisfy his costs and expenses; which order and the acceptance of money under it is a bar to an action by the aggrieved party for such loss and injury."

In passing upon these sections (*Clover Leaf Dairy Co. v. Van Gerven,* 73 Utah 471, 275 P. 9, 10,) the court says:

"It will be observed that there is nothing in the language used in section 7076, supra, that authorized the court to impose costs as a part of the penalty for contempt. The judgment for costs must find support by reason of the provisions of section 7068, supra. Under the provisions of that section no authority is given the court to order the defendants imprisoned, if the costs are not paid. The provisions of section 7068 are clearly intended to enable the aggrieved party to pursue his civil remedy against the wrongdoer in the contempt proceedings."

It therefore appears that there is no merit in the contention that the trial court erred in failing to find loss or injury to the plaintiff, as a condition precedent to finding the defendants guilty of contempt.

When it is shown that, in this arid region, at a time when it is needed by a prior appropriator of water, the water of the prior appropriator has been diverted and used by another, who at the time, and under the decree of the court, is not entitled to it, and that the appropriator has a beneficial use therefor, injury of necessity results, and the fact that damage is not claimed or proved makes no difference. That a specific amount of injury or damages is not shown is not material, and especially in an action, the purpose of which is punishment for contempt,

and to require respect for and enforcement of the decree and not for the recovery of damages.

The enforcement of the decree in this case is injunctive, and restraining in character, not mandatory, affirmative, or ordering performance of something required to be done. The defendants raise some question as to the correctness of the decree, and in so far as merely clerical errors were concerned, the court granted the relief.

"A party may question the order which he is charged with refusing to obey, only insofar as he can show it to be absolutely void; he cannot be heard to say that it is merely erroneous, however flagrant it may appear to be since judgments of courts cannot be attacked collaterally for mere irregularities." 6 R. C. L. 505.

Relating to an attack upon a judgment this court, in the case of *Redfield* v. *First National Bank,* 66 Utah 459, 244 P. 210, at page 214 makes the following statement of the law:

"While it is true that an action of this kind is a direct attack upon the judgment, yet the rules and limitations esablished and recognized by courts of equity, except in cases of palpable fraud, render the attack almost as difficult of accomplishment as would be a collateral attack. * * * The fact that a party has suffered some injustice and that the judgment may be wrong in law is not alone sufficient. As said in 2 Freeman on Judgments (4th Ed.) p. 854: 'A court of equity does not interfere on the ground that injustice has been done, or that a judgment is wrong in law or in fact, or that its enforcement will work a great hardship, unless the party complaining was, without his fault, deprived of his opportunity to present his defense in the original action.' "

*Denver City Irrigation & Water Co.* v. *Middaugh,* 12 Colo. 434, 21 P. 565, 567, 13 Am. St. Rep. 234, holds:

"A valid judgment is conclusive between the parties, not only as to such matters as were in fact determined in that proceeding, but as to every other matter which the parties might have litigated as incident to, or essentially connected with, the subject-matter of the litigation, whether the same as a of matter fact were or were not considered."

The defendants also complain that the trial court erred in striking the testimony of certain witnesses and in striking from the files certain tendered defenses. The testimony stricken all related to the alleged defenses to the order to show cause. An examination of the transcript and proceedings shows that the proposed pleadings, tendering issues by way of defense, were matters relating to alleged errors in the original decree or matters arising out of the subject-matter of the original suit. The tendered defenses were properly stricken, and the striking of the defenses created a situation of such character that there were no issues to present evidence to support, so the striking of the evidence was proper as well as the striking of the proposed defenses.

The decree the defendants are charged with violating has been before this court before in the case of *Logan, Hyde Park & Smithfield Canal Co.* v. *Logan City,* 72 Utah 221, 269 P. 776, 778. In that case the question was not a question of the validity of the original decree. It was a suit as to the manner of use of a water right determined in the original decree, and by a separate suit, an adjudication of matters attempted to be determined upon the ground the original suit did not determine them. In discussing the scope and effect of the decree in the original cause, which is the same decree involved in this cause, this court said:

"There was pleaded by the plaintiffs and cross-defendant, and introduced in evidence, the record of a former judgment and decree of the district court of Cache county, dated February 21, 1932 entered in an action in which the plaintiffs and the cross-defendant in the present action and Logan City were all parties."

In the case at bar all the parties were parties to the action referred to, the only difference being the contest related to the Blacksmith Fork river instead of the Logan river.

The court then further proceeds:

"The pleadings in the action showed that the action was brought for the purpose of determining, confirming, and quieting the titles of

the parties thereto to the use of the waters of Logan river. Logan City was a party defendant, and was required to set up any adverse claim it had to the rights asserted by the other parties to the action."

The court further says:

"It is true that the rights of Logan City for power purposes were not alleged in the pleadings, nor mentioned in the decree. As to what the parties contemplated should be adjudicated, we may look no further than the pleadings, the findings, and the judgment in the action. The matter adjudicated in the prior action was the rights of the parties to the use of the waters of Logan river. Specifically, for the purpose of the present argument, the subject-matter or issue in that action was the several rights of the plaintiffs and cross-defendant to the use of certain defined quantities of water for specified purposes, and those rights were quieted and confirmed. These are the things made res adjudicata by that decree. And the legal effect of the adjudication is to forever bar any of the other parties to the decree from asserting any adverse claim to such rights."

Substituting the Blacksmith Fork river for the Logan river, and they both belong to the same system, and the rights thereto were adjudicated at the same time, the statements above quoted are applicable with equal force to the parties, the proceeding, and the subject-matter.

Again:

"At the trial Logan City offered certain evidence, relating to matters occurring before the date of the decree above referred to, in support of its claim tending to show that its right was superior and paramount to the rights of the plaintiffs and the cross-defendant. The plaintiffs and cross-defendant objected to this evidence upon the ground that the priority of their rights had been conclusively determined by the former decree. * * * The rejection of this evidence by the trial court, therefore, meant no more than to prevent Logan City from questioning what had previously been conclusively adjudged against it. And so far as concerns the relief awarded to the plaintiffs and cross-defendant the matter was immaterial."

Upon the authority above set forth it appears the trial court was correct as to the matters relating to the rejection of the tendered answer and amendment to the answer, and the offered evidence in support of them.

The record also discloses ample evidence to support the findings made by the trial court, and the court finds no merit in the assignments of error relating thereto.

There is, however, one matter upon which there was much evidence submitted and at least tentatively admitted by the court that deserves notice, while not determinative of the question as to whether the decision of the court was correct.

The defendants claimed to have acquired an adverse right to the use of water since the entry of the decree. It is rather difficult to harmonize the positions of a party with reference to a judgment of the court who claims a right and receives his water under and in pursuance of a decree, over a period of seven or eight years, and during the ■ same period, claims to have acquired an adverse right to an amount in excess of that awarded to him. Whether the question of adverse use or the question of a right to take an additional quantity of water because of alleged return flow was actually before the court may be doubted. It seems from the record all these affirmative defenses were stricken by the trial court. However, what is said in the case of *Spring Creek Irr. Co.* v. *Zollinger,* 58 Utah 90, 197 P. 737, 739, is pertinent here:

"It is conceded that it is far more probable that a right by adverse use may be acquired by parties on the upper portions of a stream than by parties below for the reasons above suggested, but in either case the presumption is against acquisition of title in any such manner. In the instant case we find no suggestion whatever in the evidence that the plaintiff permitted defendants to use the water continuously for any consecutive period of seven years when plaintiff was needing the water. If plaintiff, during any period of time, did not need the water, it would have no right to interfere with defendants' use thereof. This is elementary doctrine.

"In Long on Irrigation, at section 90, p. 160, discussing the question of title by adverse use, the author says: 'So also, where there is sufficient water in the stream to supply the wants and demands of all the parties, its use by one cannot be an invasion of the rights of any other, and hence cannot be the foundation of any prescriptive claim.' * * *

"The burden is on the party who claims title by adverse use to establish the fact that the use is adverse.

"In *Smith* v. *North Canyon Water Co.*, 16 Utah 194, at page 202, 52 P. 283, at page 286, this court laid down the following rule as to what constitutes title to water adverse use: 'The right of the defendant in the water would become fixed only after seven years' continuous, uninterrupted, hostile, notorious, adverse enjoyment; and, to have been adverse, it must have been asserted under the claim of title, with the knowledge and acquiescence of the person having the prior right, and must have been uninterrupted. To be adverse, it must have been accompanied by all the elements required to make out such adverse possession; the possession must have been actual occupation, open, notorious, hostile, and under a claim of title exclusive of any other right, continuous, and uninterrupted for a period of seven years.' "

Appellants argue that the respondents have no right to object to any diversions of water made by appellants so long as there is a return flow equal to the amount diverted, and complain of the ruling of the court denying the appellants the privilege of showing that the greater portion of the water diverted returns to the stream by way of seepage.

Much may be said about the practice and results of the application of early or surplus water upon higher or upstream areas, and it may be plausibly argued that such practices tend to reduce fluctuations of these mountain streams, and that other benefits may result. In the original proceeding, the determination of the respective rights to the use of all the waters of the stream were determined, the beneficial use, priorities, and quantities appropriated. All matters of return flow were no doubt taken into consideration in that determination.

Much may be said by way of argument, and many facts adduced to show that many of the fluctuating mountain streams of this region produce at times a maximum flow at about the time of minimum beneficial application, and a minimum flow about the period of maximum necessity. Construction of reservoirs, off-seasonal application on higher areas, and other expedients may be adopted to minimize the fluctuation and equalize and regulate time and quantity of flow to approximate a meeting of supply and needs.

It is argued by appellants that it has always been the policy of the courts to encourage the conservation of the water supply, and to hold that there shall be no waste of water, and that all parties are entitled to use water so long as such use does not prejudice or interfere with the rights of others. That such is a fundamental policy of the courts and the purpose of the law requires no argument. To argue, however, that without an agreement among the parties or without application to the court having and retaining jurisdiction of the waters of a stream under a valid and subsisting decree, that a party to such decree may proceed to acquire rights adverse to the other parties to the decree by an alleged development, or by making a use, or claiming a right without first having made an appeal to the court to be heard upon the basis of fundamental equities, may not be done. Increase in the efficiency of carrying channels, more systematic application of water, increase of knowledge as to the quantity that may be applied to beneficial use, may tend to create an available surplus at times when theretofore no such surplus existed. A contempt proceeding for the purpose of maintaining the validity, purposes, and sanctity of the decrees of the court may not by answer or defense attacking the decree under the guise of a subsequently acquired right in violation of the decree transform the proceeding into an equity proceeding to escape the consequences of a deliberate violation. Rights once determined by a valid decree of the court, accepted and in force, must be respected. Courts of equity have always had a ready disposition to attend and hear a petitioner who comes with clean hands and a righteous cause.

In the case we find no error affecting adversely any of the rights of appellants. Let the judgment be affirmed. Respondents are awarded costs.

STRAUP, ELIAS HANSEN, FOLLAND and EPHRAIM HANSON, JJ., concur.

CHERRY, C. J., did not participate herein.