**Joan S. PETERSON, Plaintiff and Respondent,**

v.

**Richard Stewart PETERSON, Defendant and Appellant.**

No. 13758.

Supreme Court of Utah.

Dec. 27, 1974.

R. Mont McDowell, Roe & Fowler, Salt Lake City, for defendant and appellant.

Harold A. Hintze, Strong, Poelman & Fox, Salt Lake City, for plaintiff and respondent.

HENRIOD, Justice:

Appeal from an order of one district court judge that vacated an order entered by another 9½ years before in a divorce matter having to do with alleged delinquent support money. Reversed, with instructions to vacate the order vacating the previous order. Costs to defendant.

In May, 1955, the parties were divorced, and Mrs. P was awarded custody of two minor boys, and Mr. P was ordered to pay for their support,—with right of visitation.

In August, 1965, an order to show cause why she should not be held in contempt for failure to comply with the visitation rights provision, duly served on Mrs. P, was ignored by her, whereupon District Court Judge No. 1 in September, 1965, executed an order holding her in contempt. The court further ordered that the payment of support money "is suspended until such time as the plaintiff appears in person . . . and purges herself of contempt." Mr. P thereupon stopped paying the monthly amounts.

Nine and a half years later, Mrs. P, (now Mrs. Joan S. Johnston) moved for an order to show cause why Mr. P should not pay an amount claimed to have accrued, with interest, amounting to $11,600, and Mr. P confronted Mrs. P, at a hearing thereon. District Court Judge No. 2, with plenary disregard for the propriety or effectiveness of No. 1's erstwhile sacred interdiction, in June, 1964, promptly vacated No. 1's order that ostensibly,—and we think effectively,—was pronounced to preserve the dignity of the court and to denounce the care-less affrontery reflected in Mrs. P's questionable respect for the judiciary, not the least of which was the pride of His Honor No. 1. No. 2 also entered judgment against Mr. P for the $11,600 and ordered him to start paying again.

The destruction of No. 1's rhetoric was devastating and in haec verba was that

"Said order was made without jurisdiction to suspend child support because of alleged misconduct on the part of plaintiff (Mrs. P)." But not all was saddening to Mr. P, since No. 2 Judge complimented him as No. 1 had not complimented Mrs. P, by saying "Defendant is specifically found not to be in contempt of Court,"—the assumption, we take it, being that such finding referred to No. 2, not No. 1.

■ Mr. P urged four points on appeal, but all may be merged in one for the purpose of this case: That the trial judge erred in vacating the other judge's order.

There is no question but that Mrs. P was in contempt of court, after having been in such straits for 9½ years, when she applied for the support money judgment, without having purged herself of the contempt. That requirement was a condition precedent to obtaining the support money, i. e.,—the exercise of Mr. P's right to see his children. Mrs. P had not permitted this, which became the basis for her contempt. In short, she had not done and is not doing equity the while she insists on it, by now seeking, without any displayed penitence, remorse or strings attached, to invoke the very jurisdiction of the same court that she flouted before. She was in no conscionable position to do so and the court need not have entertained her petition.[1] To coin a paraphrased maxim of equity and reduce it to pigeon English, "One may not make a monkey out of the Court,"—without cause, that is.

Significantly, counsel for Mrs. P answers the point on appeal mentioned above by not answering it, saying instead that, well, anyway, even though she did not respond to the order to show cause 9½ years ago, at the hearing on which she was held in contempt, Mr. P did not send her a notice of the outcome of the hearing. Such reasoning is not only unrealistic and inequitable but rather indefensible. Either she knew or should have known what had happened when the support money not only languished but died,[2] as did the necessity for notice, where, from some of the remarks of the trial court she seemingly had folded her tent and stole into the Nevada desert, without leaving a forwarding address, so far as the record is concerned.

Furthermore, it would appear that if notice were not mailed, it was unnecessary under Rule 77(d), Utah Rules of Civil Procedure, since Mrs. P was in default.

■ It would also appear that the order entered 9½ years before, finding Mrs. P in contempt and suspending support payments, remained in full force and effect since an order adjudging contempt is an appealable order,[3] from which no timely appeal was perfected here.

Another legitimate reason why the court erred in vacating the contempt order is reflected in language found in Mr. Justice Crockett's concurring opinion in Wallis v. Wallis,[4] to which we subscribe, to the effect that in equity and good conscience:

> The [support] of the provision for alimony and support money is to provide for the current needs, and not to allow the beneficiary to sit by and permit a burdensome debt to accumulate and then use it to harass the defendant so that he cannot hold a job or live a respectable existence.

1. Baker v. Baker, 119 Utah 37, 224 P.2d 192 (1950), and cases cited therein. Counsel for Mrs. P says "the law in Baker is no longer good law," citing "recent decisions" in support. He cites only two, Hovey v. Elliot, 167 U.S. 409, 17 S.Ct. 841, 42 L.Ed. 215, decided in 1897, and Bishop v. Bishop, 321 P.2d 416 (Okl.1958). A casual review of those cases will reflect that both have to do with allowing a *defendant*, who has been summoned to appear, an opportunity to answer the charge of contempt made against him,—not cases

like that here where the *complainant*, not the defendant, is the one, who not only has been charged previously with contempt, but actually has been found guilty of it.

2. U.C.I.T. v. Courtesy Motors, 8 Utah 2d 275, 333 P.2d 628 (1959).

3. Utah Power & Light Co. v. Richmond, 80 Utah 105, 13 P.2d 320 (1932); Foreman v. Foreman, 111 Utah 113, 176 P.2d 165 (1947).

4. 9 Utah 2d 237, 342 P.2d 103 (1959).

■ In addition to the above, although it is not impossible, under some circumstances, for one district judge to vacate the orders of his colleagues,—ordinarily this cannot be done. To accomplish this feat would require such a procedure as appeal,[5] or an unusual, independent procedure of some kind,[6]—but not in virtue of the ordinary motions, orders to show cause and the like,—all of which leads us to the conclusion that the decision must be and is reversed.

CALLISTER, C. J., and CROCKETT, ELLETT and TUCKETT, JJ., concur.

Edward M. Garrett of Hanson & Garrett, Salt Lake City, for plaintiffs and appellants.

Thomas N. Crowther and John Parsons of Parsons, Kruse & Crowther, Salt Lake City, for defendants and respondents.

5. Harward v. Harward, Utah, 526 P.2d 1183 (1974).

6. State v. Morgan, Utah, 527 P.2d 225 (1974).