Susan Quentine RACE, Plaintiff
and Appellant,

v.

Robert Wayne RACE, Defendant
and Respondent.

No. 19146.

Supreme Court of Utah.

June 9, 1987.

Kellie F. Williams, Salt Lake City, for plaintiff and appellant.

Kent T. Yano, Salt Lake City, for defendant and respondent.

HOWE, Justice:

The plaintiff, Susan Q. Race, appeals from a decree of divorce in which she and the defendant, Robert W. Race, were each awarded a divorce from the other. She contends that the trial court erred in its division of marital property and in its orders as to payment of debts, child support, and contempt of the plaintiff.

## I.  DEBTS

At the time of trial, the defendant was a debtor in a wage-earner plan (chapter 13) in the federal bankruptcy court. In its decree of divorce, the trial court ordered that a house and lot owned by the parties be sold, the debts listed on the defendant's wage-earner plan be paid, and any balance be divided between the parties. Thereafter, the defendant lost his job, and his wage-earner plan was converted to a straight bankruptcy (chapter 7). His trustee in bankruptcy took control of the house and sold it. After payment of the secured obligations against the house and costs of sale, there is left a balance of $28,915.40. That amount is being paid to the trustee in bankruptcy by the buyers of the property in monthly installments of $192.37 until 1992, at which time the entire remaining balance becomes due and payable. The trustee apparently intends to pay the costs of administration of the bankruptcy and the claims of the defendant's unsecured creditors with the balance. At the present, it appears that those payments will exhaust the funds, and it is doubtful that there will be any amount available to be divided between the parties.

The plaintiff did not attend the trial which was held on October 1, 1981. She was living out of state with two of the parties' three minor children. Due to the plaintiff's absence, all testimony adduced at trial in support of her grounds for divorce came from the defendant. She likewise presented no evidence regarding the source or the nature of the debts listed on the schedules of the defendant's wage-earner plan. The defendant testified that the debts there listed were jointly owed by him and the plaintiff. As above mentioned, the trial court decreed that those debts be paid from the proceeds of the sale of the house and lot. The decree was dated December 14, 1981, and reserved for later determination only issues as to custody, support, and visitation of the children and possible modification of the division of the household furniture contained in the decree.

On January 17, 1982, more than three months after the trial, the plaintiff's attorney filed a written "motion to reconsider" in which he asked the trial court to reconsider certain aspects of its ruling and to modify its decree to exclude certain debts from payment out of the proceeds of the house. The Plaintiff claimed that those debts were not joint debts, but were the personal or business debts of the defendant alone. The defendant objected to the motion on the ground that the court had fully adjudicated and disposed of the issues of debts and property division in its December 14 decree of divorce. However, the trial court allowed the plaintiff's attorney to propound written interrogatories to the defendant concerning the source of the debts, subject to any objection which might be

filed by the defendant. Ultimately, the court sustained the defendant's objections to the interrogatories and refused to reopen the case to allow the plaintiff to present her evidence regarding the nature and source of the debts.

■ There was no abuse of discretion in not reopening the case to allow the plaintiff to present evidence on the debts. In the first place, the trial was not held until fourteen months after the plaintiff had filed her complaint, and the plaintiff had that time to conduct her discovery. Secondly, the plaintiff voluntarily absented herself from the trial, thereby making it extremely difficult for her attorney to contest the payment of the debts listed on the schedules of the defendant's wage-earner plan. Even on February 26, 1982, when the plaintiff's motion to reconsider was heard, the plaintiff was not present and her counsel had no admissible evidence to present regarding the debts. Because of this handicap, he continually urged the court to require the defendant to answer interrogatories to provide him with the necessary evidence. It was not until August 12, 1982, over ten months after the trial, that the plaintiff finally appeared in person in court prepared to give testimony concerning the nature and source of the debts. Under these circumstances, the trial court did not abuse its discretion in refusing to reopen the divorce decree and to rehear and redetermine matters which it had already decided. The record is replete with pleas and suggestions by the trial court that the plaintiff return to Utah so that it could fairly and adequately determine the issues of the case. It conducted a total of five trial hearings to resolve the difficult issues. The plaintiff's attorney valiantly endeavored to represent her interests, but he was severely handicapped by the absence of his client. The record reflects that the trial judge was a paragon of patience. We cannot say that he was obligated to reopen the decree on issues he had decided and to allow the plaintiff to belatedly conduct discovery and present testimony on an issue that had long been determined.

## II. PROPERTY DIVISION AND HOMESTEAD RIGHTS

■ The plaintiff contends that the trial court erred in not awarding to her out of the proceeds of the sale of the property an amount which she had contributed from her own premarital funds toward the down payment on the purchase of the property. For the very same reasons we have enunciated above, we find no error. Because the plaintiff was not present at the trial, she proffered no evidence that she had contributed any of her own funds to the down payment made on the property. The trial court did not refuse to admit any evidence on this issue at trial. Her counsel did not ask the defendant (the sole witness on this subject at the trial) if any of the plaintiff's funds went into the property. He testified that his premarital funds comprised the down payment.

■ The plaintiff further contends that the trial court erred in not setting off to her a homestead in the property. She asserts that she had a right to a homestead under Utah Code Ann. § 78-23-3. Again, at trial her counsel did not raise an issue as to any homestead right she may have had. Indeed, it was not until four months later, in February of 1982, that the plaintiff made and caused to be recorded her declaration of homestead. The trial judge properly took the position that he had made the property division at the time of the trial and that he would not reopen that part of the case to relitigate that matter. We cannot say that he abused his discretion in that refusal.

■ The question of whether a trial court must in a division of property in a divorce case set off to each party their homestead exemption in the property being divided has apparently not arisen before in this state. The plaintiff cites no case law in support of her claim of homestead. Two jurisdictions have ruled that the trial court is empowered to divide the property without regard to homestead exemption. *Ruprecht v. Ruprecht*, 255 Minn. 80, 96 N.W.2d 14 (1959); *Closson v. Closson*, 30 Wyo. 1, 215 P. 485 (1923). These cases

hold that where there is no specific statutory provision for the disposition of a homestead on divorce, a statute (similar to Utah Code Ann. § 30–3–5) authorizing the court in the divorce case to make a "just and equitable" disposition of the property controls. The reason for this rule can be readily seen. If in every divorce case in which the parties own real property they are entitled to have a homestead set apart to them, the power of the trial court to divide the property equitably between the parties will be severely limited. It would appear that the property or equity therein would always have to be divided, and the trial court could never award the property solely to one party such as a family residence for the wife and children. It may be that the plaintiff (and perhaps the defendant, too) may be entitled to a homestead exemption under the bankruptcy law, but those applications should be presented to the bankruptcy court which sold the house and now has control of the funds. The decree of divorce put legal title in the defendant only to facilitate the sale. That fact should not prejudice the plaintiff since the decree clearly preserved her one-half equity.

## III. CHILD SUPPORT

■ In an order supplemental to the decree of divorce, the trial court ordered that the children undergo therapy at Primary Children's Hospital and that visitation by the defendant be integrated into that therapy when appropriate in the opinion of the responsible professionals. The court also ordered that the defendant pay child support, but conditioned payment of that support on the development of a visitation schedule. Although the awarding of visitation and child support is within the court's discretion, the court must consider the child's paramount right to and need for his parent's support. Utah Code Ann. §§ 78–45–3 and –4; *Woodward v. Woodward*, 709 P.2d 393 (Utah 1985). Court-ordered child support is an obligation imposed for the benefit of the children, not the divorcing spouse. We find no circumstances here which justify the trial court in deferring support until visitation between

the children and their father could be worked out. In the interim, they needed and were entitled to his support. For these same reasons, a stay of execution imposed by the trial court on a judgment which the plaintiff obtained for delinquent temporary support should be lifted.

## IV. CONTEMPT

■ While this case was awaiting trial, the plaintiff was found in contempt of court and sentenced to serve ten days in the county jail because of her refusal to allow the defendant to visit their children in her custody. However, the court stayed the execution of the sentence, which stay is still in effect. The plaintiff contends that she purged herself of any contempt by thereafter cooperating in visitation by the defendant and that the trial court should not have allowed her finding of contempt to remain in the record. We find no abuse of discretion. The trial court permitted the plaintiff to purge herself of contempt by bringing the children back to Utah within ten days so that the defendant could visit them. She failed to do so until eight months later.

## V. CONCLUSION

The decree of divorce is affirmed in all aspects except those portions staying payment of child support and staying execution on the plaintiff's judgment are reversed and the case is remanded to the trial court to modify the decree to commence the running of child support from March 16, 1983, and to lift the stay of execution on the plaintiff's judgment.

HALL, C.J., and STEWART, A.C.J., concur.

DURHAM, Justice (concurring and dissenting):

I dissent from the portions of the majority opinion dealing with evidence concerning defendant's bankruptcy debts, the denial of plaintiff's homestead exemption, and the contempt judgment against plaintiff.

## I.  BANKRUPTCY DEBTS

The majority opinion states that the trial court should not be required to reopen the case to hear evidence offered concerning the nature of defendant's bankruptcy debts.  I disagree.

The amended divorce decree of December 14, 1981, ordered payment of *all* defendant's debts from the proceeds of the sale of the home before dividing the equity between them.  On January 7, 1982, plaintiff moved to modify the decree and offered an itemized list of the bankruptcy debts, indicating which debts were marital and which were defendant's personal and business debts.  Defendant repeatedly refused to cooperate with the court's attempts to discover the nature of his bankruptcy debts.  Furthermore, the trial court had not made a final determination of this issue at the time of the final hearing on February 4, 1983.  The court abused its discretion in refusing to hear plaintiff's evidence concerning the nature of defendant's debts because it had not made a final determination on that issue at the time plaintiff offered the evidence and because plaintiff offered considerable evidence to show that not all of the debts were marital.

## II.  PROPERTY DIVISION AND HOMESTEAD EXEMPTION

I also disagree with the majority's assertion that the trial court did not abuse its discretion in refusing to hear evidence that the down payment on the family house came from plaintiff's premarital funds.  The majority states that the trial court did not err in refusing to hear this evidence because plaintiff did not offer it at trial.  Defendant, however, offered contradictory evidence at trial concerning whether all of his bankruptcy debts were joint or separate and the trial court, as already mentioned, had not made a final determination as to the nature of his debts at the time plaintiff offered evidence to contradict defendant's representations at trial.  Under these circumstances, the trial court abused its discretion when it refused to hear plaintiff's evidence concerning the source of the funds used for the down payment on the family home.

I further disagree with the majority's treatment of plaintiff's application for a homestead exemption.  The Utah Constitution establishes as a right of state citizenship a mandatory homestead exemption protecting certain property against claims of unsecured creditors.  Utah Const. art XXII, § 1.  We have held that the courts have no power to deny a homestead exemption to a qualified petitioner.  In *Volker-Scowcroft Lumber Co. v. Vance*, 32 Utah 74, 84–85, 88 P. 896, 899 (1907), this Court stated:

> [I]t is obvious that the constitutional provision exempts a homestead from execution sale without restriction, limitation, or exception of any kind.... When the people, through their Constitution, have spoken and have thus exempted the homestead from execution sales without exceptions of any kind, neither the Legislature nor the courts have power to subject it to any such sale.

Again, in *Utah Builders' Supply Co. v. Gardner*, 86 Utah 257, 259, 42 P.2d 989, 989 (1935), we declared:

> The right to claim a homestead exemption is a right which the head of a family may assert to prevent sale under execution of his homestead at any time prior to the sale of the premises, unless such claim has been previously asserted and actually adjudicated against him.  This is not a mere privilege conferred upon the head of a family, but an absolute right intended to secure and protect the home against creditors as a means of support to every family in the state, and the claim may be made at any time before sale or execution.

Under the Utah Exemptions Act, Utah Code Ann. §§ 78-23-1 to -15 (Supp.1986), a homestead exemption may be claimed for a head of family, a spouse, and each dependent, any one of whom may assert the claim.  "A homestead consisting of property in this state shall be exempt in an amount not exceeding $8,000 in value for a head of family, $2,000 in value for a spouse, and

$500 in value for each other dependent." Utah Code Ann. § 78–23–3 (Supp.1986).

> If an individual fails to select property entitled to be claimed as exempt or to object to a levy on the property or to assert any other right under this chapter, the spouse or a dependent of the individual or any other authorized person may make the claim or objection or assert the rights provided by this chapter.

Utah Code Ann. § 78–23–12 (Supp.1986).

Plaintiff filed a complete and timely declaration of homestead as required by the Utah Exemptions Act, claiming the maximum statutory amount for herself, defendant, and the three children. Defendant's bankruptcy does not affect the exemption because the federal Bankruptcy Reform Act specifically allows a state homestead exemption: "[A]n individual debtor may exempt from property of the estate ... any property that is exempt under Federal law, ... or State or local law that is applicable on the date of the filing of the petition...." 11 U.S.C.A. § 522(b)(2)(A) (1979). Defendant's trustee in bankruptcy has indicated that she will make no distribution of funds until resolution of this appeal. Furthermore, any act of defendant waiving the exemption would have no effect as to plaintiff; Utah Code Ann. § 78–23–11 (Supp.1986) states: "A waiver of exemptions executed in favor of an unsecured creditor before levy on an individual's property is unenforceable."

The trial court, in its final order of March 16, 1983, ruled that the issue of plaintiff's homestead exemption had been previously decided and specifically held that plaintiff could not obtain a homestead exemption. The factual basis for this ruling does not appear in the record, and the court made no finding of fact which would support the ruling. Nothing in the record indicates that any previous order had addressed the homestead issue. The court did not state the legal basis for this decision and failed to consider the controlling constitutional, statutory, and case law. For the reasons stated above, I would reverse and remand with instructions to award plaintiff her homestead exemption.

## III. CONTEMPT

The majority opinion also erroneously upholds plaintiff's contempt conviction. The opinion ignores the trial court's failure to comply with procedures established by both statute and case law.

Our judicial code states that "[d]isobedience of any lawful judgment, order or process of the court" is a contempt of the authority of that court. Utah Code Ann. § 78–32–1(5) (1977). In imposing a judgment of contempt, however, the trial court must follow certain statutory procedures. The Utah Rules of Civil Procedure require written findings of fact and conclusions of law in support of any judgment "[i]n all actions tried upon the facts without a jury." Utah R.Civ.P. 52(a).

The legislature has particularly emphasized the need for complying with procedural requirements governing contempt orders:

> When a contempt is committed in the immediate view and presence of the court, or judge at chambers, it may be punished summarily, for which an order must be made, reciting the facts as occurring in such immediate view and presence, adjudging that the person proceeded against is thereby guilty of a contempt.... When the contempt is not committed in the immediate view and presence of the court or judge at chambers, an affidavit shall be presented to the court or judge of the facts constituting the contempt....

Utah Code Ann. § 78–32–3 (1977). To support a judgment of contempt for acts committed out of court, the law requires not only that the court make written findings of fact and conclusions of law after a hearing, but also that a written affidavit or statement of facts be submitted to a fact finder before the hearing. An order of contempt unsupported by findings of fact and conclusions of law fails to comply with the requirements of section 78–32–3 and Rule 52(a).

In *Thomas v. Thomas*, 569 P.2d 1119 (Utah 1977), this Court also established explicit requirements for imposing an order

of contempt. We stated that because a contempt sentence is quasi-criminal, it cannot be imposed unless it appears by clear and convincing evidence: (1) that the party knew what was required of him; (2) that he had the ability to comply; and (3) that he willfully and knowingly failed and refused to do so. *Thomas*, 569 P.2d at 1121. A primary purpose of written findings of fact is to preserve for the record the reasons for the trial court's judgment. Without such written findings, nothing exists to show on what evidence the court relied, and review of whether there was clear and convincing evidence of contempt becomes impossible.

The trial court held plaintiff in contempt of court for "wilful failure to obey court orders." Because no written findings of fact or conclusions of law supported the order, as required by section 78–32–3 and Rule 52(a), this Court cannot determine the basis for the contempt ruling. Several motions for contempt were filed, yet only one was supported by affidavit as required by law, and that affidavit alleged only a single act of contempt. Clear and convincing evidence of this act would justify a judgment of contempt, but without the necessary findings, we have no way of evaluating whether the kind of evidence required under *Thomas* was presented to the court. The affidavit in itself was insufficient.

Because the contempt order failed to comply with the formal requirements established by statute and case law, I would reverse it.

ZIMMERMAN, J., concurs in the concurring and dissenting opinion of DURHAM, J.