**Sharleen M. McREYNOLDS, Plaintiff and Appellant,**

v.

**Glenn L. McREYNOLDS, Defendant and Respondent.**

**No. 890172–CA.**

Court of Appeals of Utah.

Feb. 13, 1990.

D. David Lambert, Provo, for plaintiff and appellant.

Richard B. Johnson, Orem, for defendant and respondent.

Before GARFF, BILLINGS and DAVIDSON, JJ.

PER CURIAM:

Plaintiff Sharleen M. McReynolds appeals from an order of the district court refusing to award judgment for unpaid and past due child support in the amount of $3,520. We reverse and remand for entry of judgment for the arrearage in child support.

Plaintiff filed a petition in August 1986, seeking, in part, recovery of past due child support from her ex-husband and an increase in future child support based on changed circumstances. Defendant Glenn L. McReynolds filed a counter-petition seeking a reduction in child support and a revision in the schedule for visitation.

In a bench trial held in May 1988, the trial court found a substantial change of circumstances and ordered an increase in monthly child support beginning in June 1988.[1] Based on the parties' stipulation, the trial court also awarded plaintiff a judgment in the amount of $1,120 for unpaid child support through July 1986, the month preceding filing of her petition for modification. The court further determined that the amount of unpaid child support from August 1986, through May 1988, amounted to $3,520, but the court refused to award judgment for that amount. Plaintiff filed a Motion For New Trial or Amendment of Judgment, which was denied in February, 1989. Plaintiff appeals only from the trial court's refusal to award judgment for unpaid child support from August 1986 through May 1988.

In its original ruling, the trial court concluded "that the accrued support for the period between July and the present time as found in the sum of $3,520.00 cannot in good conscience be allowed the plaintiff because of the conduct of the parties to which she has been principally responsible in denying rights of visitation to the defendant." In support of its ruling, the court stated: "Where one denies another a right he is entitled to and then seeks to enforce against him a right she claims in relation to the denied right, equity will not permit the perpetrator to enforce the right." The trial court issued a second memorandum decision denying plaintiff's motions for new trial and to amend the judgment. In that decision, the court stated that it found no evidence that suggested the children "were not supported adequately during the period of time when the obligations were not paid by the defendant," or "that the State of Utah or any public agency had to provide such support, or that any particular debt was required to be incurred by the plaintiff who supports the children." The court dis-

---

1. Plaintiff did not raise, and we do not consider, whether the adjustment should have been retroactive to the date of her petition.

tinguished this case from precedent precluding a court from conditioning child support on the exercise of visitation as follows:

> The Court is aware of the case law which prohibits the Court from conditioning child support payments on obtaining visitation with the children. It is noted that the Court had not so structured the support order, and its findings were based upon equitable principles of conduct on plaintiff's part which intimidated and frustrated defendant's attempts to visit by secreting the children and denying telephone contact with them. It is clear that this proceeding is for the plaintiff to reimburse herself for the support that she had expended on the minor children. The Court in its decision cited equitable principles which it believes in these circumstances should apply to prevent plaintiff from asserting her custodial right for the children's support while not discharging her custodial responsibility to cooperate with defendant's rights of visitation.

> It is the Court's opinion that the conduct of plaintiff as found by the Court would constitute a contempt of the Court's orders relative to visitation but it is difficult to fashion commensurate punishment for that wrong, in view of the amount the plaintiff would otherwise be entitled to for the unpaid child support. It would be this Court's interpretation that in a factual situation where as indicated above the support payments have not been paid but the children have been supported by their mother that this action is not an action for the benefit of the children but for the benefit of the mother. In that light she has erred and should not be permitted to assert her right to that compensation while having denied the defendant his right of visitation.

■ The issue before this court is whether the trial court erred in extinguishing a debt for past due and unpaid child support on the basis of equitable principles where a custodial parent has interfered with, or prevented, the exercise of visitation by a noncustodial parent who has the obligation to pay support. We hold that it was error to deny judgment for the arrearage.

The Utah Supreme Court considered the relationship of visitation and child support in *Race v. Race*, 740 P.2d 253 (Utah 1987). In *Race*, the Court was asked to determine whether child support could be withheld until the noncustodial parent obtained visitation. The trial court ordered the defendant-father to pay child support, but conditioned payment on the development of a visitation schedule in cooperation with the children's counselor. The Court held that the child support award could not be subject to such a prerequisite and that a stay of execution imposed on a judgment for delinquent temporary support must be lifted. The Court reasoned:

> Although the awarding of visitation and child support is within the court's discretion, the court must consider the child's paramount right to and need for his parent's support. Court-ordered child support is an obligation imposed for the benefit of the children, not the divorcing spouse. We find no circumstances here which justify the trial court in deferring support until visitation between the children and their father could be worked out. In the interim, they needed and were entitled to his support. *For these same reasons, a stay of execution imposed by the trial court on a judgment which the plaintiff obtained for delinquent temporary support should be lifted.*

*Id.* at 256 (citations omitted) (emphasis added). It is significant that the plaintiff-mother in *Race* had previously been adjudicated to be in contempt of court "because of her refusal to allow the defendant to visit their children in her custody." *Id.* Nevertheless, the Court held that it was error to stay child support based on the custodial parent's conduct.[2]

---

2. *Rohr v. Rohr*, 709 P.2d 382 (Utah 1985) deals with the opposite situation. The Utah Supreme Court adopted the rule that "[a] court may not deny the noncustodial parent visitation rights

for the *mere* failure to pay child support, where the failure is due to an inability to pay." *Id.* at 383. The Court concluded, however, that "where the noncustodial parent's refusal to pay

Similarly, the case of *Reick v. Reick*, 652 P.2d 916 (Utah 1982), although not involving a dispute over visitation, also discussed the relationship of a custodial parent's improper conduct to the child support obligation. *Reick* was a noncustodial parent's appeal from an order increasing child support. The appellant urged that the custodial parent lacked standing in court because she had concealed her remarriage in order to continue collecting alimony. The Utah Supreme Court held:

> As to the support award, this contention can be viewed only as a diversionary issue. Deception between spouses has no significance in determining the basic and unalienable right to child support, since such right is vested in the minor. The suggestion that the mother here, having "unclean hands," has no standing in court, may have pertinence as to a personal claim against her husband but not as to that of the child.

*Id.* at 917. *Reick* also noted that a minor could bring a support claim through any authorized representative "wholly unrelated to its father or mother and even without his or her consent or role as litigants." *Id.* at n. 2. *See also Hansen v. Gossett*, 590 P.2d 1258, 1260 (Utah 1979); *Reeves v. Reeves*, 556 P.2d 1267, 1268 (Utah 1976).

The trial court attempted to distinguish the present case from *Race* by a finding that the children were adequately supported during the period in question, and, thus, the action was one for "reimbursement" of the mother. We reject this reasoning as inconsistent with *Race* and *Reick*, which leave no question that even contumacious actions by the custodial parent do not impair the child's right to ongoing support or preclude the custodial parent from recovering past due child support. *But see Hunter v. Hunter*, 669 P.2d 430 (Utah 1983) (Discussing the application of waiver or estoppel to the right to obtain reimbursement for past support provided

child support is contumacious, or willful and intentional, and not due to inability to pay,

to a child by a person not obligated to pay child support).

Finally, we conclude that *Johnson v. Johnson*, 560 P.2d 1132 (Utah 1977), relied upon by the trial court, has no bearing on the factual situation in this case. Similarly, *Peterson v. Peterson*, 530 P.2d 821 (Utah 1974) involved the situation where the custodial parent was found to be in contempt and child support was withheld until the custodial parent purged herself of contempt by allowing visitation. Without expressing an opinion as to the continued precedential value of *Peterson* after *Race*, we conclude that *Peterson* is factually distinct from the present case because no contempt proceeding was ever initiated against plaintiff in this case.

■ We also conclude that the trial court could not validate its ruling after the fact by reference to behavior that "would constitute a contempt." The Utah Supreme Court clarified in *Von Hake v. Thomas*, 759 P.2d 1162 (Utah 1988), that contempt proceedings are subject to due process requirements. Indirect contempt "can properly be adjudged only in a proceeding more tightly hedged about with procedural protections," which include the requirement of an affidavit reciting the facts constituting the contempt. *Id.* at 1170. The trial court had no authority in this case to "punish" a contempt where no contempt proceeding has been properly initiated.

■ The judgment of the trial court is reversed insofar as it fails to include judgment for unpaid and past due child support for the period from August, 1986, through May, 1988, which the trial court found to be in the principal amount of $3,520. The case is remanded for entry of judgment in favor of plaintiff in the amount of $3,520, which shall accrue interest at the statutory rate as is consistent with *Stroud v. Stroud*, 738 P.2d 649, 650–51 (Utah App.1987) and Utah Code Ann. § 30–3–10.6 (Supp.1989), which became effective as to installments of child support due after its effective date of April 27, 1987.[3] The trial court retains

visitation rights may be reduced or denied, if the welfare of the child so requires." *Id.*

**3.** Utah Code Ann. § 30–3–10.6 (Supp.1989) pro-

jurisdiction to establish payment schedules, as appropriate, for the satisfaction of the judgment.

GARFF, BILLINGS and DAVIDSON, JJ., concur.

vides, in relevant part, that "Each payment or installment of child ... support under any child support order ... is, on and after the date it is due: (a) a judgment with the same attributes and effect of any judgment of a district court...." As to payments due after April 27, 1987, plaintiff is entitled to interest from the time the payment is due until it is paid. As to payments due prior to April 27, 1987, plaintiff is entitled to interest at the statutory rate from the date of entry of judgment. *Stroud v. Stroud,* 738 P.2d 649, 651 (Utah Ct.App.1987). In this case, we note that defendant made provisions to pay all child support accruing prior to the date that the petition to modify was filed, which was followed by a counter-petition to reduce support. The operation of section 30–3–10.6, however, results in interest accruing at the statutory rate for judgments throughout any period of non-payment of past due child support.